## McCALL *v.* CALIFORNIA.

ERROR TO THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA.

No. 1190.   Submitted October 28, 1889. — Decided May 19, 1890.

An agency of a line of railroad between Chicago and New York, established in San Francisco for the purpose of inducing passengers going from San Francisco to New York to take that line at Chicago, but not engaged in selling tickets for the route, or receiving or paying out money on account of it, is an agency engaged in interstate commerce; and a license-tax imposed upon the agent for the privilege of doing business in San Francisco is a tax upon interstate commerce, and is unconstitutional.

ORDER No. 1589 of the board of supervisors of the city and county of San Francisco, "imposing municipal licenses" provided among other things, as follows:

"SEC. 1. Every person who shall violate any of the provisions of this order shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not more than one thousand dollars or by imprisonment no more than six months or by both."

"SEC. 10. The rates of license shall be according to the following schedule:

"Subdivision XXXIII.

"First. For every railroad agency, twenty-five dollars per quarter."

The plaintiff in error, J. G. McCall, was an agent in the city and county of San Francisco, California, for the New York, Lake Erie and Western Railroad Company, a corporation having its principal place of business in the city of Chicago, and which operated a continuous line of road between Chicago and New York. He had not taken out a license for the quarter ending March 31, 1888, as required by the provisions of the aforesaid order. As such agent his duties consisted in soliciting passenger traffic in that city and county over the road he represented. He did not sell tickets to such passengers over that road or any other, but took them to the Central Pacific Railroad Company, where the tickets were sold to them. The only duty he was required to perform for such company was to induce people contemplating taking a trip East to be booked over the line he represented. He neither received nor paid out any money or other valuable consideration on account thereof.

On the 3d of June, 1888, the plaintiff in error was convicted of misdemeanor in the police judge's court of the city and county of San Francisco for violation of the provisions of the aforesaid order, and on the 16th of November of that year, after a motion for a new trial and a motion in arrest of judgment had both been denied, the court sentenced him to pay a fine of twenty dollars, and in default of the payment thereof to imprisonment in the county jail of the city and county until the same should be paid, for a period not exceeding twenty days. Upon appeal to the Superior Court of the city and county of San Francisco that court affirmed the judgment below, and this writ of error was then sued out.

*Mr. Joseph P. Kelly* for plaintiff in error.

*Mr. James D. Page* for defendant in error.

The solicitation of business under the circumstances cannot be interstate commerce, as it relates to something wholly outside of the State in which solicitation is made, and has not for an end the introduction of anything into the State. In that

respect this case differs from *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489.

The municipal license tax sought to be recovered by this action is not a tax upon the business of the railroad represented, but a license tax for the privilege of maintaining an agency in the city of San Francisco. There is an essential difference between this case and that of *Leloup* v. *Port of Mobile*, 127 U. S. 640. It comes directly within the principles decided by the Supreme Court of Pennsylvania in *Norfolk & Western Railroad* v. *Pennsylvania*, 114 Penn. St. 256. See also *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181 ; *Paul* v. *Virginia*, 8 Wall. 168 ; and *Smith* v. *Alabama*, 124 U. S. 465.

In the drummers' cases the connection of the avocation with interstate commerce is immediate. Goods are to be sent to the State where the drummer is working from another State. He secures orders for them to be sent, *i.e.*, arranges the contract for sending them. The sending is commerce, — interstate commerce, — and the contract to send is immediately connected with this commerce and essential to its existence ; for one of the two States to prevent the contract would be to prevent the commerce.

But the railroad here in question is operated wholly between two States distant from California. The commerce which it does is exclusively between those distant States — namely, transporting persons and goods between them.

A man in California soliciting business for such a road is at best very remotely connected with interstate commerce, and to hinder his work cannot directly hinder the interstate commerce of the road. That commerce is elsewhere, and his business is not essential to its existence, but only very remotely, if at all accessory to its prosperity. The constitutional provision was intended to remedy an unfortunate condition of things, in which States to or through which commerce passed or would pass subjected that commerce to burdens and hindrances. The sweeping away of these burdens and hindrances was the object to be effected, and the Constitution should not be construed to restrict the rights of the States further than is necessary to get rid of substantial hindrances to commerce.

Matters which, in a very remote degree, and in a State in which the commerce itself does not go, affect not the freedom of the commerce but its volume, should be regarded as still within the control of each State. California can levy no prohibitive tax in this case, for the commerce is wholly without California and beyond her reach. Neither can she "regulate" it, for the same reason. Neither can she interfere with any of the usual means and instruments of carrying on such a commerce as a railroad carries on, still for the same reason. A person distant from the road, soliciting others to travel over it when they get to it, is not one of the usual — certainly not one of the necessary — instruments of a railroad company's commerce. The essential commerce is the carrying; whereas this defendant does none of the carrying nor even of the contracting to carry — he is a mere advertisement.

It is not claimed that the ordinance providing for a license from railway agencies conflicts with the laws of the State of California, nor that it is an unwarrantable exercise of police power on the part of the board of supervisors, except in so far as it is claimed that it conflicts with the Constitution of the United States and the laws of Congress.

I respectfully submit that the right sought to be enforced is a proper one, and that under the cases cited there is no interference with commerce nor interstate commerce in so doing.

Mr. Justice Lamar, after stating the case as above reported, delivered the opinion of the court.

There are three assignments of error which are reducible to the single proposition that the order under which the plaintiff in error was convicted is repugnant to clause 3 of section 8, article 1, of the Constitution of the United States, commonly known as the "commerce clause" of the Constitution, in that it imposes a tax upon interstate commerce, and that therefore the court below erred in not so deciding and in rendering judgment against the plaintiff in error.

This proposition presents the only question in the case, and if it appears from this record that the business in which the

plaintiff in error was engaged was interstate commerce, it must follow that the license tax exacted of him as a condition precedent to his carrying on that business was a tax upon interstate commerce, and therefore violative of the commercial clause of the Constitution.

In the recent case of *Lyng* v. *State of Michigan*, decided April 28, 135 U. S. 161, 166, this court said : " We have repeatedly held that no State has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, for the reason that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress."

In *County of Mobile* v. *Kimball*, 102 U. S. 691, 702, this court defined interstate commerce in the following language : " Commerce with foreign countries and among the States, strictly considered, consists in intercourse and traffic, including in these terms navigation and the transportation and transit of persons and property as well as the purchase, sale and exchange of commodities."

Pomeroy in his work on " Constitutional Law," section 378, referring to the signification of the word " commerce," says : " It includes the *fact of intercourse and of traffic* and the subject matter of intercourse and traffic. The fact of intercourse and traffic, again, embraces all the *means, instruments*, and places by and in which intercourse and traffic are carried on, and, further still, comprehends the act of carrying them on at these places and by and with these means. The subject matter of intercourse or traffic may be either things, goods, chattels, merchandise or persons. All these may, therefore, be regulated."

Tested by these principles and definitions, what was the business or occupation carried on by the plaintiff in error on which the tax in question was imposed ? It is agreed by both parties that his business was that of soliciting passengers to travel over the railroad which he represents as an agent. It is admitted that the travel which it was his business to solicit is

not from one place to another within the State of California. His business, therefore, as a railroad agent had no connection, direct or indirect, with any domestic commerce between two or more places within the State. His employment was limited exclusively to inducing persons in the State of California to travel from that State into and through other States to the city of New York. To what, then, does his agency relate except to interstate transportation of persons? Is not that as much an agency of interstate commerce as if he were engaged in soliciting and securing the transportation of freight from San Francisco to New York City over that line of railroad? If the business of the New York, Lake Erie and Western Railroad Company in carrying passengers by rail between Chicago and New York and intermediate points, in both directions, is interstate commerce, as much so as is the carrying of freight, it follows that the soliciting of passengers to travel over that route was a part of the business of securing the passenger traffic of the company. The object and effect of his soliciting agency were to swell the volume of the business of the road. It was one of the "*means*" by which the company sought to increase and doubtless did increase its interstate passenger traffic. It was not incidentally or remotely connected with the business of the road, but was a direct method of increasing that business. The tax upon it, therefore, was, according to the principles established by the decisions of this court, a tax upon a means or an occupation of carrying on interstate commerce, pure and simple.

In *Robbins* v. *Shelby Taxing District,* 120 U. S. 489, the taxing district of Shelby County, Tennessee, which included the city of Memphis, acting under the authority of a statute of that State, attempted to impose a license tax upon a "drummer" for soliciting, within that district, the sale of goods for a firm in Cincinnati which he represented; but this court decided that such a soliciting of business constituted a part of interstate commerce, and that the statute of Tennessee imposing a tax upon such business was in conflict with the commerce clause of the Constitution of the United States, and was therefore void.

A like decision was rendered in *Leloup* v. *Port of Mobile*, 127 U. S. 640; and in *Asher* v. *Texas*, 128 U. S. 129, both of these decisions were carefully considered and the principle was affirmed. In *Stoutenburgh* v. *Hennick*, 129 U. S. 141, the same question came before the court and the principle governing the cases to which we have referred was again carefully considered and affirmed. See also *Pickard* v. *Pullman Southern Car Co.*, 117 U. S. 34; *Fargo* v. *Michigan*, 121 U. S. 230; and the recent cases of *Leisy* v. *Hardin*, 135 U. S. 100, and *Lyng* v. *Michigan*, 135 U. S. 161, decided April 28th, 1890.

We might conclude our observations on the case with the above remarks, but we deem it proper to notice some of the points raised by the defendant in error and which were relied upon by the court below to control its decision sustaining the validity of the aforesaid order.

It is argued that the New York, Lake Erie and Western Railroad Company is a foreign corporation operating between Chicago and New York City, wholly outside of and distinct from California; and it is very earnestly contended that the business of soliciting passengers in California for such a road cannot be interstate commerce, as it has not for its end the introduction of anything into the State. We do not think that fact, even as stated, is material in this case. The argument is based upon the assumption that the provision in the Constitution of the United States relating to commerce among the States applies as a limitation of power only to those States through which such commerce would pass, and that any other State can impose any tax it may deem proper upon such commerce. To state such a proposition is to refute it; for if the clause in question prohibits a State from taxing interstate commerce as it passes through its own territory, *a fortiori*, the prohibition will extend to such commerce when it does not pass through its territory. The argument entirely overlooks the fact that in this case the object was to send passenger traffic out of California into and through the other States traversed by the road for which the plaintiff in error was soliciting patronage.

It is further said that the soliciting of passengers in California for a railroad running from Chicago to New York, if connected with interstate commerce at all, is so very remotely connected with it that the hindrance to the business of the plaintiff in error caused by the tax could not directly affect the commerce of the road, because his business was not essential to such commerce. The reply to this proposition is, that the essentiality of the business of the plaintiff in error to the commerce of the road he represented is not the test as to whether that business was a part of interstate commerce. It may readily be admitted, without prejudicing his defence, that the road would continue to carry passengers between Chicago and New York even if the agent had been prohibited altogether from pursuing his business in California. The test is — Was this business a part of the commerce of the road? Did it assist, or was it carried on with the purpose to assist, in increasing the amount of passenger traffic on the road? If it did, the power to tax it involves the lessening of the commerce of the road to an extent commensurate with the amount of business done by the agent.

The court below relied mainly upon *Norfolk & Western Railroad Co.* v. *Pennsylvania,* 114 Penn. St. 256; *Pembina Mining Co.* v. *Pennsylvania,* 125 U. S. 181, and *Smith* v. *Alabama,* 124 U. S. 465, to support its judgment. But we are of opinion that neither of the cases of this court sustains that position. The other case we dispose of in a separate opinion, reversing the judgment in the court below, *post,* 114.

*Pembina Mining Co.* v. *Pennsylvania* manifestly is not an authority in favor of the position of the court below, but rather the reverse. In that case a company incorporated under the laws of Colorado for the purpose of doing a general mining and milling business in that State had an office in Philadelphia "for the use of its officers, stockholders, agents, and employés." The State of Pennsylvania, through her proper officers, assessed a tax against the corporation for "office license," which the company resisted on the ground that the act under which the assessment was levied was in conflict with the "commerce clause" of the Constitution of

the United States, in that it was an attempt to tax interstate commerce, as such. The Pennsylvania courts affirmed the validity of the assessment and, a writ of error having been sued out, the case was brought here for review. This court held that the state legislation in question did not infringe upon the commercial clause of the Constitution, because it imposed no prohibition upon the transportation into the State of the products of the corporation or upon their sale in the State, but simply exacted a license tax from the corporation for its office in the Commonwealth; and went on to say: "The exaction of a license fee to enable the corporation to have an office for that purpose within the Commonwealth is clearly within the competency of its legislature. It was decided long ago, and the doctrine has been often affirmed since, that a corporation created by one State cannot, with some exceptions, to which we shall presently refer, do business in another State without the latter's consent, express or implied," p. 184; quoting at some length from *Paul* v. *Virginia*, 8 Wall. 168, to sustain the conclusion there reached. But the court further remarked that "a qualification of this doctrine was expressed in *Pensacola Telegraph Company* v. *Western Union Telegraph Company*, 96 U. S. 1, 12, so far as it applies to corporations engaged in commerce under the authority or with the permission of Congress," p. 185; and in conclusion said: "The only limitation upon this power of the State to exclude a foreign corporation from doing business within its limits, or hiring offices for that purpose, or to exact conditions for allowing the corporation to do business or hire offices there, arises where the corporation is in the employ of the federal government, or where its business is strictly commerce, interstate or foreign. The control of such commerce, being in the federal government, is not to be restricted by State authority," p. 190. The reference to *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.* clearly indicates that the court did not intend to lay down any rule recognizing the power of a State to interfere in any manner with interstate commerce. The latter case was one in which the legislature of Florida had granted to the Pensacola company the

exclusive right of establishing and maintaining telegraph lines in two counties in that State, and this court held that such legislation was in conflict with the act of Congress of July 24, 1866, granting to any telegraph company the right "to construct, maintain and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by act of Congress, and over, under or across the navigable streams or waters of the United States," etc. This court held such state legislation unconstitutional, as interfering with interstate commerce, and in its opinion announced no doctrine not in harmony with the principles of the later decisions to which we have referred.

*Smith* v. *Alabama* was a case in which an act of the state legislature imposing a license upon any locomotive engineer operating or running any engine or train of cars on any railroad in that State was resisted by an engineer of the Mobile and Ohio Railroad Company, who ran an engine drawing passenger coaches on that road from Mobile in that State to Corinth in Mississippi, on the ground that the statute of the State was an attempt to regulate interstate commerce, and was, therefore, repugnant to the commercial clause of the Constitution of the United States. We held, however, that the statute in question was not in its nature a regulation of commerce; that so far as it affected commercial transactions among the States, its effect was so indirect, incidental and remote as not to burden or impede such commerce, and that it was not, therefore, in conflict with the Constitution of the United States or any law of Congress. It having been thus ascertained that the legislation of the State of Alabama did not impose any burden or tax upon interstate commerce, there is nothing to be found in the opinion in that case that is not in harmony with the doctrines we have asserted in this case. That opinion quoted at length from *Sherlock* v. *Alling*, 93 U. S. 99, 102, where it was expressly held that "the States cannot by legislation place burdens upon commerce with foreign nations or among the several States. The decisions go to that

extent and their soundness is not questioned. But, upon an examination of the cases in which they were rendered, it will be found that the legislation adjudged invalid imposed a tax upon some *instrument* or subject of commerce, or *exacted a license fee from parties engaged in commercial pursuits*, or created an impediment to the free navigation of some public waters, or prescribed conditions in accordance with which commerce in particular articles or between particular places was required to be conducted. In all the cases the legislation condemned operated directly upon commerce, either by way of tax upon its business, license upon its pursuit in particular channels or conditions for carrying it on."

> *It results from what we have said that the judgment of the court below should be, and it hereby is, reversed, and the case is remanded to that court for further proceedings in conformity with this opinion.*

MR. CHIEF JUSTICE FULLER, MR. JUSTICE GRAY and MR. JUSTICE BREWER dissented.