*Criminal law—Selling steamship tickets without a license—Act of July 17, 1919, P. L. 1003—Act of May 20, 1921, P. L. 997, section 1.*

The Act of July 17, 1919, P. L. 1003, amended by the Act of May 20, 1921, providing for the licensing of persons engaged in

## 150    COMMONWEALTH *v.* DISANTO, Appellant.

the selling of steamship tickets is unconstitutional in that it contravenes the commerce clause of the Constitution of the United States.

A state law is unconstitutional and void which requires a party to take out a license for carrying on foreign business, no matter how specious the pretext may be for imposing it. No state has a right to lay a tax on foreign commerce in any form, whether by duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, for the reason that taxation is a burden on that commerce, and amounts to a regulation of it which solely belongs to congress.

KELLER and PORTER, JJ., dissent.

Argued March 9, 1925. Appeal, No. 18, March T., 1925, by defendant, from judgment of Q. S. Dauphin Co., Jan. Sessions, 1922, No. 135, in the case of Commonwealth of Pennsylvania v. Giovanni Disanto. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Indictment for unlawful sale of steamship tickets, contrary to the Act of July 17, 1919, P. L. 1003, as amended by Act of May 20, 1921, P. L. 997. Before WICKERSHAM, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

*Error assigned* was, among others, in overruling defendant's motion in arrest of judgment.

*W. H. Neely,* of *Wickersham & Neely,* and with him *George Kunkel,* for appellant.—The defendant was engaged exclusively in the sale of tickets to foreign ports, and was therefore engaged in foreign commerce. The Act of July 17, 1919, as amended by the Act of May 20, 1921, is unconstitutional: Bowman v. Ry. Co., 125 U. S. 465; Gibbons v. Ogden, 9 Wheat. 1; Passenger Cases,

7 Howard 283; State Freight Tax Cases, 15 Wall 232; Railroad Company v. Husen, 95 U. S. 465; Welton v. Missouri, 91 U. S. 275; Covington Bridge Co. v. Kentucky, 154 U. S. 204; Pickard v. Pullman Car Co., 117 U. S. 34; Brown v. Houston, 114 U. S. 622; Lyng v. Michigan, 135 U. S. 161; Adams Express Company v. New York City, 232 U. S. 14; Texas Transport and Terminal Company v. City of New Orleans, 68 U. S. Sup. Ct. Law. Ed. 283; McCall v. California, 136 U. S. 104; Stockard v. Morgan, 185 U. S. 27; Rearick v. Pennsylvania, 203 U. S. 507.

*Robert T. Fox,* District Attorney, and with him *Philip S. Moyer,* Deputy Attorney General, for appellee.

OPINION BY GAWTHROP, J., May 4, 1925:

The defendant was indicted and convicted in the Court of Quarter Sessions of Dauphin County for engaging in the sale of steamship tickets without a license, in violation of the Act of July 17, 1919, P. L. 1003, as amended by the Act of May 20, 1921, P. L. 997; 8 Purdon 9159. Section 1 of the act provides that no person other than railroad or steamship companies shall hereafter engage within this State in the sale of steamship tickets or orders for transportation, or, shall receive deposits of money on account of the sale of steamship tickets without being a citizen of the United States, and having first procured from the commissioner of banking a license to carry on such business. The application for license must be accompanied by proof of good moral character and fitness to conduct such business properly, and any other information required by the commissioner of banking. It must also be accompanied by a list of the steamship lines for which the applicant is authorized agent, which list shall not contain less than three such lines. The license is granted upon approval by the commissioner of banking, and the payment of a fee of $50 for the use of the banking department and may be renewed on payment

of a like fee annually. Section 2 requires the applicant for license to file with the application a bond of $1,000, with sureties as provided, and containing the condition that the obligor will duly account to all persons or parties having an interest for all moneys received for steamship tickets or orders for transportation, and that he will not be guilty of any fraud or misrepresentation to purchasers of such tickets or orders, and that a suit to recover on the bond may be brought by any party aggrieved or by the commissioner of banking in the name of the Commonwealth to recover the full penalty thereof. Section 4 prescribes punishment by fine or imprisonment, or both, for conducting the business without having obtained the license.

The evidence establishes, and it is conceded, that the defendant was the authorized agent of four different steamship companies to sell tickets or orders for transportation entitling the purchasers thereof to passage on their steamers to and from foreign ports; that he had not taken out a license as required by the statute; and that since 1921 he has sold such steamship tickets at his office in the City of Harrisburg, Dauphin County. After verdict his counsel made a motion in arrest of judgment and assailed the Act of 1919 and its amendment on the ground that it contravenes the commerce clause of the Constitution of the United States by placing a direct and undue burden on foreign commerce, in which defendant was exclusively engaged. The court below overruled the motion and sentenced the defendant to pay a fine of $100 and costs, holding that the defendant was not engaged in interstate commerce; that the Act of 1919 and its amendment constitutes a valid and wholesome exercise of the police power of the Commonwealth; and that the contention of the defendant that the act is unconstitutional because it attempts to regulate interstate or foreign commerce cannot be sustained.

We are unable to concur with the learned judge on this subject. All of the steamship companies which the

defendant represented were exclusively engaged in foreign commerce and the defendant's business was confined to representing principals so engaged. It is well settled that a state law is unconstitutional and void which requires a party to take out a license for carrying on interstate commerce, no matter how specious the pretext may be for imposing it: Crutcher v. Kentucky, 141 U. S. 47, and cases cited; Adams Express Co. v. New York, 232 U. S. 14. "No state has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce or on the receipts derived from that transportation, or on the occupation or business of carrying it on, for the reason that such taxation is a burden on that commerce and amounts to a regulation of it, which belongs solely to congress": Lyng v. Michigan, 135 U. S. 161; Ozark Pipe Line Corp. v. Monier, Advance Opinions U. S. Supreme Ct., Feb. 2, 1925, 69 L. Ed. 210. "The prerogative, the responsibility and the duty of providing for the security of the citizens and the people of the United States in relation to foreign corporate bodies, or foreign individuals with whom they may have relations of foreign commerce, belong to the government of the United States, and not to the governments of the several states; and confidence in that regard may be reposed in the national legislature without any anxiety or apprehension arising from the fact that the subject-matter is not within the province or jurisdiction of the state legislatures; and the same thing is exactly true with regard to interstate commerce as it is with regard to foreign commerce": Crutcher v. Kentucky, supra.

Commerce "includes the fact of intercourse and of traffic and the subject-matter of intercourse and traffic. The fact of intercourse and traffic, again, embraces all the means, instruments and places by and in which intercourse and traffic are carried on, and, further still, comprehends the act of carrying them on at these places and by and with these means. The subject-matter of inter-

course or traffic may be either things, goods, chattels, merchandise or persons. All these may, therefore, be regulated": McCall v. California, 136 U. S. 104. Even the police power of the State does not justify the imposition of a direct burden upon interstate commerce As was said in Crutcher v. Kentucky, supra, everything which the legislature of a state may deem essential for the good order of society and the well-being of its citizens cannot be set up against the exclusive power of Congress to regulate the operations of foreign and interstate commerce. The state police power must be confined to matters which are appropriately of local concern. The validity of state legislation affecting interstate or foreign commerce depends not upon the intention of the legislature or the purpose of the act but upon its operation and effect (Com. v. Keary, 198 Pa. 500). Local police regulations cannot go so far as to deny the right to engage in interstate commerce, or to treat it as a local privilege and prohibit its exercise in the absence of a local license: Adams Express Co. v. New York, supra, and cases cited therein.

It is well settled that a state or municipality is powerless to impose a tax upon persons for securing or seeking to secure the transportation of freight or passengers in interstate or foreign commerce (McCall v. California, 136 U. S. 104; Texas Transport & Terminal Co. v. City of New Orleans, 264 U. S. 150). Those decisions control the present case. In the McCall case the City of San Francisco imposed a license of $25 per quarter upon every railroad agency, and provided a penalty for violation of the order. The plaintiff was the agent of a railroad company and was engaged in San Francisco in the business of soliciting and inducing persons to travel from the State of California into and through other states to New York City over the line of railroad he represented. He had not taken out a license and a penalty was imposed under the ordinance. It was held that the business of the agent constituted a method of secur-

ing passenger traffic for the company, and therefore the tax was one "upon a means or an occupation of carrying on interstate commerce, pure and simple." The only difference between that case and this is that there the agent was engaged in seeking interstate passenger business while here the agent was seeking foreign passenger business. As pointed out in that case and the Texas Transport Case, cited, the principle is the same.

While this opinion might well end here, we deem it proper to notice the point raised by the law officers of the Commonwealth that the act is not a taxing or revenue law; that its purpose and effect is to safeguard the public against fraud practiced by dishonest and irresponsible persons and, as the amount of the license is small and trifling, does not depend upon the number of companies represented by one agent, and is not commensurate with the amount of business done, it is fairly within the police power of the State and only remotely and indirectly affects foreign commerce. We appreciate the force of this argument and have some personal knowledge of the evils at which the act aimed and its salutary effect. Nevertheless, after the most deliberate consideration of the question and giving the act the benefit of every presumption in favor of its constitutionality, we are constrained to hold that it contravenes the commerce clause of the Constitution of the United States, as is abundantly shown by the decisions cited; that it is unconstitutional and void as applied to the case of the defendant, and that the judgment of the court of quarter sessions must be reversed.

The judgment is reversed and the defendant discharged from his recognizance.

PORTER and KELLER, JJ., dissent.

DISSENTING OPINION BY KELLER, J.:

The Act of July 17, 1919, P. L. 1003, as amended by the Act of May 20, 1921, P. L. 997, does not, in my opinion, place any direct burden on foreign commerce. It

is not a tax or revenue statute.  It is a police measure designed to protect citizens and residents of this Commonwealth from loss at the hands of unscrupulous and dishonest venders of steamship tickets, an evil recognized by the majority opinion and referred to with much force by our Supreme Court (MESTREZAT, J.) in Com. v. Grossman, 248 Pa. 11, 17.  Its provisions do not apply to railroad or steamship companies selling such transportation but only to persons, corporations, etc., not actually engaged in transporting passengers by railroad or steamship, who hold themselves out as authorized to sell steamship tickets or orders for transportation.  It applies to all such dealers of steamship transportation generally, without discrimination, to domestic as well as foreign.  The statute has no concern with the amount of business done by the applicant; the license fee is the same whether he sells tickets for three lines or a hundred.  Its provisions are all directed to the moral character of the licensee, his fitness to conduct the business and his financial responsibility to his customers and patrons.  It no more regulates or burdens foreign commerce than a statute requiring locomotive engineers to be examined and licensed by a state board before being eligible to drive or operate an engine or train of cars within a state regulates interstate commerce: Smith v. Alabama, 124 U. S. 465.  It is somewhat similar in scope and purpose to the regulation of insurance agents: Com. v. Vrooman, 164 Pa. 306.

In my judgment the cases relied upon by the appellant and cited in the majority opinion are distinguishable in principle from this one.  They comprise cases where the state attempted to levy a tax or license fee upon a corporation or association actually engaged in interstate commerce, as in Adams Express Co. v. New York, 232 U. S. 14; Ozark Pipe Line Corp. v. Monier et al., 000 U. S. 000 (Adv. Opinions February 2, 1925, p. 210) ; or upon an agent employed by and directly representing such company or association, as in Crutcher v. Ken-

tucky, 141 U. S. 47; McCall v. California, 136 U. S. 104, (see Davis v. Farmers Coöperative Co., 262 U. S. 312, 315); Texas Transport & Terminal Co. v. New Orleans, 264 U. S. 150. They would be applicable here if the statute under consideration was extended so as to embrace within its provisions railroad and steamship companies engaged in interstate or foreign commerce, either directly, or as respects their employees operating branch offices or agencies on the company's account. But this statute expressly exempts such corporations actually engaged in transporting passengers. The record shows that defendant's representation of steamship companies was confined to revocable authority to sell their tickets; that he was in no sense their employee or agent in the ordinary sense of the word; but rather like a merchant who is authorized by the manufacturer of a particular brand of goods to sell his wares. Had it been proven that the defendant was the employee of a steamship company selling tickets and orders for transportation as its agent and on its account—in other words, that the company was actually carrying on the business—no license would have been required under the statute.

This case is similar in some respects to Wagner v. City of Covington, 251 U. S. 95, where an occupation tax fixed in amount was sustained, although the business taxed consisted exclusively of selling soft drinks brought in from another state, and sold in original packages. In that case Mr. Justice PITNEY said: "We have, then, a state tax upon the business of an itinerant vender of goods as carried on within the state,—a tax applicable alike to all such dealers, irrespective of where their goods are manufactured, and without discrimination against goods manufactured in other states. It is settled by repeated decisions of this court that a license regulation or tax of this nature, imposed by a state with respect to the making of such sales of goods within its borders, is not to be deemed a regulation of or direct burden upon

interstate commerce, although enforced impartially with respect to goods manufactured without as well as within the state, and does not conflict with the 'commerce clause.' "

It was held in Morgan's Steamship Co. v. Louisiana Board of Health, 118 U. S. 455, that the system of quarantine laws established by the statutes of Louisiana was a rightful exercise of the police power for the protection of health, which is not forbidden by the Constitution of the United States, and that the requirement that each vessel passing a quarantine station should pay a fee fixed by the statute, for examination as to her sanitary condition, and the ports from which she came, was not a tax within the meaning of the Constitution concerning tonnage tax imposed by the states.

The Supreme Court of the United States has upheld many state statutes which in so far as they affected transactions of commerce among the states, did so only indirectly, incidentally and remotely and not so as to burden or impede them. As for example, statutes requiring the examination and licensing of locomotive engineers: Smith v. Alabama, supra; N. C. & St. L. Ry. v. Alabama, 128 U. S. 96; forbidding the running of freight trains within the state on Sundays: Hennington v. Georgia, 163 U. S. 299; enacting regulations affecting switching service: M. P. Ry. v. Larrabee F. M. Co., 211 U. S. 612; the Full Crew Acts: C. R. I. & P. Ry. Co. v. Arkansas, 219 U. S. 453; heating of steam passenger cars; N. Y., N. H. & H. R. Co. v. N. Y., 165 U. S. 628; requiring carriers to settle within a specified time claims for loss or damage to freight while in their possession within the state: A. C. L. R. Co. v. Mazursky, 216 U. S. 122; forbidding the delivery for shipment in interstate commerce of citrus fruits then and there immature and unfit for consumption: Sligh v. Kirkwood, 237 U. S. 52 (see pp. 60, 61); requiring a license to dispose or offer to dispose, within the state, of stocks, bonds, etc.:

Hall v. Geiger-Jones Co., 242 U. S. 539, (see pp. 557, 558).

I am of opinion that the same principle applies here; that the Act of 1919, supra, if it affects foreign commerce at all, does so only indirectly, incidentally and remotely and not so as to burden or impede it; that until Congress chooses to provide for the licensing of dealers in steamship tickets, the State may bona fide legislate on the subject under its police powers; that such a statute is not violative of the provisions of the federal constitution; and that the judgment should be affirmed.

PORTER, J., concurs in this dissent.