GULF, M. & N. R. Co. *v.* MYER.*

(Division A.  Nov. 29, 1926.)

[110 So. 444.  No. 26004.]

COMMERCE. *Assistant claim agent, injured in wreck of interstate train while returning to headquarters for further orders, held not engaged in "interstate commerce," within federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665).*

Assistant claim agent, who was injured in wreck on interstate train, while returning to headquarters for further orders, after having completed settlement of claim, *held* not engaged in "interstate commerce," within purview of federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665), so as to come within two-year limitation therein.

*\*Corpus Juris-Cyc. References: Commerce, 12CJ, p. 46, n. 23.

APPEAL from circuit court of Jones county.
HON. R. S. HALL, Judge.
Action by J. A. Myer against the Gulf, Mobile & Northern Railroad Company.  Judgment for plaintiff, and defendant appeals.  Affirmed.

*Welch & Cooper* and *Roy P. Noble,* for appellant.

We have here a man who was engaged for the most part in travel.  The execution of his duties required this. He was employed for the most part in doing it.  What were his duties while traveling?  He says the general policing of the property of the appellant, a line whose physical property extends from one state through another and into another, and whose traffic is the carrying of interstate commerce.

In *Pederson* v. *Delaware R. R. Co.,* 229 U. S. 146, 57 L. Ed. 1125, 33 Ct. Rep. 648, Pedersen was carrying a sack of rivets and while walking down the track to the bridge on which the rivets were to be used, the bridge

being a part of an interstate railroad, he was struck by a train. It was contended that he was engaged in interstate commerce. The lower court denied this, but the supreme court of the United States held that it was. See, also, *R. R. Co.* v. *Di Donato,* 65 L. Ed. 955, 25 U. S. 327, involving a flagman at a crossing.

*St. L. & S. F. R. R. Co.* v. *Seale,* 57 L. Ed. 1129, 229 U. S. 156, held that a clerk going out to take the numbers and inspect seals on an interstate train was engaged in interstate commerce. So employees going to or returning from work, the motive of which is interstate, are engaged in interstate commerce. *St. L. R. R. Co.* v. *Broltiers,* 165 S. W. 488. One who performs a duty in aid of interstate commerce and leaves his place of work to go to his boarding house and who is killed while so going is engaged in interstate commerce. *R. R. Co.* v. *Zachery,* 232 U. S. 248, 58 L. Ed. 591.

An employee in *I. C. R. R. Co.* v. *Posey,* 101 So. 644, 212 Ala. 10, whose duty it was to guard one end of a bridge or trestle on a track used in interstate commerce was held to have been engaged in interstate commerce. In *Fitzgerald* v. *G. N. R. R. Co.,* 196 N. W. 657, the Minnesota court held that a night watchman in a yard where there was interstate freight was engaged in interstate commerce and his injury brought him within the Federal Employer's Liability Act.

An employee guarding trains during strike is within the act. *Atchinson R. R. Co.* v. *Commission,* 192 Cal. 765, 220 Pac. 342; and so is a gateman who operates gates at a crossing: *So. Pac. R. R. Co.* v. *Commission,* 174 Cal. 8, 161 Pac. 1139, and a flagman at a street crossing: *West* v. *Atlantic, etc., R. R. Co.* (N. C.), 93 S. E. 479. These are the principles of the law applicable, and the application of them to these facts answers the question now before the court.

We submit that appellee was on duty and that his duty was in aid of interstate commerce; hence, his cause of action was barred by the statute of limitation. Appellee's at-

titude probably is that it was incumbent on appellant to show that appellee was engaged in interstate commerce and that this burden had not been met. But such is not the law. *Philadelphia, etc., R. R. Co.* v. *Polk,* 256 U. S. 332, 64 L. Ed. 958.

*Jeff Collins* and *J. R. Byrd,* for appellee.

There is no basis whatever for the peremptory instruction, nor do we believe that the court was in error in refusing the instruction as to the Employer's Act. The record shows without dispute that Meyers' duties were those of settling claims and of policing the property; that on the occasion he had been down to a place called Colgreen, on the Blodgett branch, to settle a personal injury claim and also claim for stock; that he was not policing property, but that he went to Colgreen for the purpose of settling these claims.

We submit from the evidence that there is no element of employment in interstate commerce on the part of Myers. Myers stated that he settled the claim and was through with that particular job and was going back to Laurel when the wreck occurred.

It is not every man who is injured on an interstate railway who is subject to the provisions of the Federal Employer's Liability Act. He must have been engaged in interstate commerce himself, and we think counsel will not seriously controvert this fact. The latest case we have been able to find which approached the instant case is that of *Erie R. R. Co.* v. *Welch,* 61 (U. S.) L. Ed. 319. The court there held that the true test as to whether an injured railway employee was engaged in interstate commerce at the time he received his injuries so as to make applicable the Employer's Liability Act of April 22, 1908, is the nature of the work he was doing at the time of the injury and the mere expectation that he would presently be called upon to perform tasks in

interstate commerce is not sufficient to bring the case within the act.

The evidence in this case presents only a question of law as to this feature and it was very proper for the court to settle that question of law and it was not necessary to submit it to the jury. See *Gillis, Administratrix, v. N. Y., etc., R. R. Co.,* 63 (U. S.) L. Ed. 738.

Argued orally by *Ellis B. Cooper,* for appellant, and *Jeff Collins* and *J. L. Byrd,* for appellee.

McGOWEN, J., delivered the opinion of the court.

Appellee, J. A. Myer, sued the Gulf, Mobile & Northern Railroad Co. defendant in the court below, appellant here, for personal injuries alleged to have been sustained by him while he was riding on a passenger train of appellant, in April, 1923; said injuries being sustained by Meyer by reason of the passenger train on which he was riding running into a box car, or a car loaded with lumber, standing on the main line of the railroad. Plaintiff sued for fifteen thousand dollars, and the jury returned a verdict for four thousand dollars. The injury was alleged to have occurred on April 10, 1923, and the suit was filed on January 9, 1926, two years and nine months after the injury.

Appellant bases its claim for reversal here on the refusal of the lower court to grant a peremptory instruction on its special plea that, at the time of the accident, the plaintiff, being an employee of the defendant railroad company, was engaged in the performance of his duties, and that at said time the defendant and the plaintiff were engaged in interstate commerce, and that this suit was filed more than two years after the occurrence of the alleged accident.

Plaintiff was an employee of the railroad, and had been since 1916. He was riding on a railroad pass. On this day, April 10, 1923, he had left Laurel, Miss., the

headquarters of his department and had gone to Colgreen to settle a personal injury claim and a stock claim for the defendant company. He finished his work at Colgreen, and was proceeding back to Laurel, Miss., for further orders from his superior officer. He embarked on passenger train No. 2 of the railroad company at McLain, and, as this train was approaching Ovett, Miss., it collided with freight cars and a wreck ensued.

Myer claimed that he was injured by being thrown suddenly to the floor and against a seat. He said he was employed by the railroad company both as assistant claim agent and special agent; that his duties consisted of settling claims and policing the property of the railroad company. He testified that it was his duty to police the property every day, and that his duty never ended while he was on the property; that, while not doing any particular thing, he was "keeping his eye out" for anything. He testified further that at the time of his injury he was on a day coach which had a smoking compartment in the rear; that the train was proceeding north, about 8:30 or 9 o'clock at night; that he had been sitting in the day coach and arose and started back to the smoker; that just as he reached the door—the partition door, rather—the train collided with the cars, throwing the plaintiff backward a distance of ten or twelve feet, landing him on his head and shoulders down between two seats on the right-hand side of the coach, with his feet over the top of one of the seats, injuring him about the neck and shoulders, knocking his front teeth loose, and rendering him "dizzy-headed" and foolish; that the pain became more severe during the night. He testified that, after overcoming his dizziness he went down to the engine to view the wreck; that, on returning from the wreck, he followed the conductor through the train and assisted in securing from the passengers information relative to injuries received by them. He stated that the train on which he was riding was running about twenty-five or thirty miles an hour. He stated

further that at the time he was injured he was not policing the company's property, nor was he engaged in any duty in the pursuance of his employment as its assistant claim agent, but that all times he "kept his eye out;" that he had no duty to perform from the time he left Colgreen until he got back to the office at Laurel; that at Laurel he expected to find orders as to what he should next do.

Mr. Henry, the chief claim agent of the defendant company, testified as to the duties of the assistant claim agent in connection with settling claims and policing the company's property, saying that Myer investigated accidents and wrecks, and that he was on duty all the time for twenty-four hours each day.

It is unnecessary to set out all the testimony in the case, because the only point relied on here is that at the time of the injury Myer was an employee of the railroad; that both employer and employee were engaged in interstate commerce; and that the suit, being brought more than two years after Myer's injury, was barred.

There is no question here that the Gulf, Mobile & Northern Railroad does interstate business, and that the passenger train on which Myer was riding was engaged in interstate business; the only question being, Was the plaintiff engaged in the performance of any duty as a part of interstate commerce at the time of his alleged injury?

Appellant relies upon the case of *St. L. S. F. & T. R. Co.* v. *Seale,* 229 U. S. 156, 33 S. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156, in which the court held that a clerk going out to take the numbers and inspect the seals on an interstate train was engaged in interstate commerce. The case cited on which appellant seems mainly to rely is *Railroad Co.* v. *Zachary,* 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159. In that case, Judge PITNEY, as the organ of the court, said, in part:

"It is argued that because so far as appears, deceased had not previously participated in any movement of in-

terstate freight, and the through cars had not as yet been attached to his engine, his employment in interstate commerce was still *in futuro*. It seems to us, however, that his acts in inspecting, oiling, firing, and preparing his engine for the trip to Selma were acts performed as a part of interstate commerce, and the circumstance that the interstate freight cars had not as yet been coupled up is legally insignificant"—citing *Pedersen* v. *Delaware, L. & W. R. Co.*, 229 U. S. 146, 151, 33 S. Ct. 648, 57 L. Ed. 1125, 1127, Ann. Cas. 1914C, 153; *St. Louis, S. F. & T. R. Co.* v. *Seale*, 229 U. S. 156, 161, 33 S. Ct. 651, 57 L. Ed. 1129, 1134, Ann. Cas. 1914C 156.

"Again it is said that, because deceased had left his engine and was going to his boarding house, he was engaged upon a personal errand, and not upon the carrier's business. Assuming (what is not clear) that the evidence fairly tended to indicate the boarding house as his destination, it nevertheless also appears that deceased was shortly to depart upon his run, having just prepared his engine for the purpose, and that he had not gone beyond the limits of the railroad yard when he was struck. There is nothing to indicate that this brief visit to the boarding house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still 'on duty,' and employed in commerce, notwithstanding his temporary absence from the locomotive engine"—citing *Missouri, K. & T. R. Co.* v. *United States*, 231 U. S. 112, 119, 34 S. Ct. 26, 58 L. Ed. 144, 147.

The court then proceeds to hold that there was at least evidence sufficient to go to the jury (if indeed there was any conflict in the evidence) on this question.

It will be noted in this case that the plaintiff's intestate was a fireman; that he had been called to go with the engine on the proposed trip, and had responded to the call; that in pursuance presumably of the call of the company, and in the discharge of his duty, he had oiled the engine, fired it, and prepared to make the run (the

trip being from Selma to Spencer, N. C.); that, after performing these duties, he started toward his boarding house, crossing the intervening track, and while so doing was injured.

In *St. L. S. F. & T. R. Co.* v. *Seale, supra,* the supreme court of the United States held that a clerk, going out to take the numbers and make inspection of the seals which fastened the car doors on a train which was interstate, was engaged in interstate commerce.

In the case of *Pedersen* v. *Delaware, L. & W. R. Co.,* 229 U. S. 146, 151, 33 S. Ct. 648, 650, 57 L. Ed. 1125, 1127 (Ann. Cas. 1914C, 153) Mr. Justice VAN DEVANTER as the organ of the court, laid down the rule in the following terse statement:

"The true test always is, Is the work in question a part of the interstate commerce in which the carrier is engaged?" Citing *McCall* v. *California,* 136 U. S. 104, 109, 111, 10 S. Ct. 881, 34 L. Ed. 391, 392, 393, 3 Inters. Com. Rep. 181; Second Employers' Liability cases (*Mondou* v. *New York N. H. & H. R. Co.,* 223 U. S. 6, 59, 32 S. Ct. 169, 56 L. Ed. 329, 350, 38 L. R. A. (N. S.) 44; *Zikos* v. *Oregon R. & Nav. Co.* (C. C.), 179 F. 893, 897, 898; *Central R. R. Co.* v. *Colasurdo,* 113 C. C. A. 379, 192, F. 901; *Darr* v. *Baltimore & O. R. R. Co.* (D. C.), 197 F. 665; *Northern Pac. R. Co.* v. *Maerkl,* 117 C. C. A. 237, 198 F. L.

The case more nearly in point than any we have examined, cited by appellee, is that of *Erie Railroad Co.* v. *Welch,* 242 U. S. 303, 37 S. Ct. 116, 61 L. Ed. 319. In the Welch case, the Ohio state court had applied the state doctrine as to the assumption of risk. It was contended by the railroad company, that its rights under the Federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665) had been violated. The testimony showed that the defendant was a common carrier railroad, engaged in commerce between states, and that Welch was a yard conductor, engaged in night duty at Brier Hill yard; that he performed miscellaneous serv-

ices in the way of shifting cars and breaking up and making up trains, under orders of the yardmaster, and had to apply frequently to the latter for his orders; that when he had performed, rather when he had run out of orders, it was his custom to report at the yardmaster's office for further orders; that, on the night of the injury, Welch, with the crew, took a freight car loaded with merchandise destined to a point without the state, from the Brier Hill yard eastwardly to the "F. D. Yard" in Youngstown, where the car was placed to go into a train; that they took the caboose a short distance further and placed it upon a siding; that they next took the engine to a water plug and took on water, and then returned with it to the Brier Hill yard; that on this return journey the engine was slowed down near the yardmaster's office so as to enable Welch to report for further orders; having executed all previous orders; and that the injury to Welch occurred while he was in the act of attempting to alight from the engine to report for further orders. It was further shown that the orders he would have received, had he not been thus injured, would have required him to immediately begin making up an interstate train. Upon this state of facts Mr. Justice PITNEY said:

"Upon the strength of this it is argued that his act at the moment of his injury partook of the nature of the work that, but for the accidental interruption, he would have been called upon to perform. In our opinion, this view is untenable. By the terms of the Employers' Liability Act the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interestate commerce is not sufficient to bring the case within the act. *Illinois C. R. Co.* v. *Behrens,* 233 U. S. 473, 478, 34 S. Ct. 646, 58 L. Ed. 1051, 1055, Ann. Cas. 1914C, 163, 10 N. C. C. A. 153.

"There remains the contention that plaintiff's act in stepping from the yard engine was in completion of his

trip to the 'F. D. Yard' with the interstate car, and hence was itself an act in furtherance of interstate commerce. This cannot be answered by saying, in the words used *arguendo* by the state supreme court (89 Ohio St. 88), that 'he was not then and there employed in moving or handling cars engaged in interstate commerce.'

"The question remains whether he was performing an act so directly and immediately connected with his previous act of placing the interstate car in the 'F. D. Yard' as to be a part of it or a necessary incident there to. *New York C. & H. R. R. Co.* v. *Carr,* 238 U. S. 260, 264, 35 S. Ct. 780, 59 L. Ed. 1298, 1300, 9 N. C. C. A. 1; *Shanks* v. *Delaware, L. & W. R. R. Co.,* 239 U. S. 556, 559, 36 S. Ct. 188, 60 L. Ed. 436, 438, L. R. A. 1916C, 797. And this depends upon whether the series of acts that he had last performed was properly to be regarded as a succession of separate tasks or as a single and indivisible task. It turns upon no interpretation of the act of Congress, but involves simply an appreciation of the testimony and admissible inferences therefrom in order to determine whether there was a question to be submitted to the jury as to the fact of employment in interestate commerce. The state courts held there was no such question, and we cannot say that in so concluding they committed manifest error. It results that, in the proper exercise of the jurisdiction of this court in cases of this character, the decision ought not to be disturbed. *Great Northern R. Co.* v. *Knapp,* 240 U. S. 464, 466, 36 S. Ct. 399, 60 L. Ed. 745, 751."

In the case before us it does not appear that the settlement of a "hog claim" or a "personal injury claim" had to do with interstate commerce, unless it be assumed that the general performance of the duties of an assistant claim agent, making investigations, settling claims, and policing the company's property, was in furtherance of or carrying on interstate commerce. We do not feel called upon to decide the question as to whether or not a special agent thus employed would be engaged in inter-

state commerce; but, conceding that he would be, the case here before us only tends to show that he was subject to call to duty at any time; that at the time of his injury he was engaged in no act save the act of returning for further orders, as was Welch in the case cited, supra. If it be conceded that he performed some service in securing the information from passengers after his injury, still at the time of the injury he was simply riding on a pass as an employee, without any known duty to perform while riding upon that train, or until he reached Laurel and received further orders from his superior officer. To put it tritely, he was "doing nothing." To hold that this assistant claim agent was engaged in interstate commerce under the facts detailed herein, would be to hold that all the employees of a railroad company, while on or about the company's premises, could, by a stretch of the imagination, be held to be engaged in that which furthers the business of carrying on interstate commerce. We do not believe that Myer was engaged in any act within the purview of the Federal Employers' Liability Act. His declaration, having been filed under the state law, is not barred by the two years' limitation under the Federal Employers' Act. The court below correctly held that said act did not apply to the facts of this case, and did not err in refusing to submit the matter to the jury upon the theory that it was Myer's duty at all times to police the company's property; and it correctly made the distinction between the duty to do and being called upon to perform that duty. Myer had not been called upon to perform any duty at the time of his injury.

Other assignments of error are without merit.

*Affirmed.*