**Anthony J. CASERTA, Plaintiff,**

v.

**HOME LINES AGENCY, INC., Defendant.**

United States District Court
S. D. New York.
April 20, 1959.

See also 154 F.Supp. 356.

reflect defendant's alleged derelictions in duty, as claimed in the amended complaint.

Arthur B. Sheehan, New York City, for plaintiff.

Gray & Wythe, New York City, for defendant. Horace Gray, New York City, of counsel.

LEVET, District Judge.

This is an action arising under the Fair Labor Standards Act of 1938, as amended, Title 29 U.S.C.A. §§ 201–219. Plaintiff, a former employee of defendant, seeks (1) recovery of $3,635.51 in wages alleged to be due as overtime; (2) an equal amount as liquidated damages under Section 216(b); and (3) an additional amount for reasonable counsel fees under Section 216(b).

After hearing the testimony, examining the exhibits, the pleadings, briefs and proposed findings, this court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. At all times hereinafter mentioned, the defendant was and now is a Delaware corporation maintaining its principal office for the conduct of its business at 42 Broadway, County, City and State of New York.

2. Between January 31, 1955 and March 3, 1957, the defendant was engaged in business as principal passenger agent in the United States for Home Lines, Lauro Lines and National Hellenic

American Line, all foreign steamship corporations, and as a passenger ticket agent for Incres-Nassau Line, also a foreign steamship corporation.

3. In the conduct of its said business defendant maintained subsidiary offices throughout a number of the principal cities in the United States.

4. As such agent defendant promoted its business and the business of its principals by supplying travel agencies and its own subsidiaries located in the United States and Canada with blank passenger contract tickets used in connection with the sale of passage on its principals' vessels. It likewise supplied said agencies with literature and material, such as various steamship travel pamphlets, sailing lists, rate sheets, tags and labels, cruise literature, deck plans, posters and similar material used for display and promotional purposes.

5. Such material, mailed and shipped from the defendant's office to the offices of travel agencies throughout the United States and Canada and which consisted of printed promotional types of literature, was either caused to be printed by the defendant in New York for the account of the principals for distribution throughout the several states of the Union and Canada or printed by the defendant's principals in Europe who caused the material to be shipped to the defendant directly from Europe for like distribution.

6. In the conduct of its business and in promoting the steamship passenger business of its principals, defendant regularly and consistently used the United States mails and other media of transmission for sending material and instructions to the offices of travel agencies throughout the United States and Canada.

7. As an incident to defendant's general agency and as general passenger agent for the respective ocean steamship lines which it represented, as aforesaid, defendant realized a brokerage or commission on the sale of passenger tickets for such lines by all travel agencies throughout the United States and Canada, including sales made at its principal office and sales made at travel agencies throughout the State of New York.

8. Between January 31, 1955 and March 3, 1957, defendant employed the plaintiff as a mail and shipping clerk and as a chauffeur under an oral agreement whereby plaintiff was to perform certain services as said mail and shipping clerk and also as chauffeur of vehicles owned by the defendant and was to receive compensation for a work week of forty hours at the rate of time and a half for work in excess of forty hours.

9. As mail and shipping clerk, plaintiff worked with the various literature and advertising material, above mentioned, which was distributed by the defendant throughout the United States and Canada. Plaintiff physically handled such material, preparing and placing it in wrappers, envelopes and packages and addressing the same for dispatch via the United States mail and other media of transmission to travel agencies located throughout the United States and Canada.

10. As chauffeur, plaintiff operated defendant's station wagon and limousine in and about the State of New York, and on rare occasions outside the State of New York to the State of New Jersey, in the prosecution of defendant's business as a general passenger agent. Each morning during the work week plaintiff obtained one of the defendant's vehicles from a garage located at 363–365 Fourth Avenue, Brooklyn, New York, and was required to drive it either directly to defendant's office at 42 Broadway, New York City, above mentioned, or to the Beverly Hotel, Lexington Avenue and 50th Street, New York City, where one Capt. Mario F. Vespa, Vice-President of the defendant, resided and to drive Vespa to defendant's office. At times, plaintiff also drove the defendant's vehicles to piers located in the State of New York or in the State of New Jersey to pick up literature and other printed matter. Each evening the plaintiff

drove the vehicle back to the garage in Brooklyn.

11. Plaintiff's monthly base wage was at the following rates:

1955 . . . . . . $300.00
1956 . . . . . . $325.00
1957 . . . . . . $350.00

The hourly overtime rate of compensation during the years of plaintiff's employment by defendant was as follows:

1955 . . . . . . $2.60
1956 . . . . . . $2.81
1957 . . . . . . $3.03

12. During plaintiff's period of employment, the defendant delegated to plaintiff the duty of keeping a record of the hours he worked, including overtime hours, and of reporting the same to the defendant. The defendant kept no independent record of the time worked by plaintiff other than weekly time slips made out by plaintiff and submitted to the defendant. The defendant paid plaintiff all wages as reflected by the weekly time slips prepared and submitted by plaintiff to defendant.

13. Plaintiff's time sheets, however, failed to reflect the work time he spent—

(a) In traveling from the garage in Brooklyn to the Beverly Hotel on those mornings when he took Capt. Vespa from the hotel to the office;

(b) In traveling directly from the garage to the office on those mornings when he did not take Capt. Vespa from the hotel to the office;

(c) In traveling from the office to the garage in the evenings;

(d) In supervising servicing of the car in the evenings.

14. The average time consumed by plaintiff when he drove from the garage in Brooklyn to the Beverly Hotel in the morning was forty minutes; the average time when he drove from the garage directly to the office was thirty minutes, and the average time driving from the office to the garage in the evening was thirty minutes. Plaintiff spent an average of approximately ten minutes in supervising the servicing of the car as to

gas and oil after returning to the garage in the evening.

15. By stipulation dated April 16, 1959, the parties agreed to the following facts, which are made a part hereof:

(a) From January 31, 1955 to May 28, 1955, plaintiff did not chauffeur the defendant's Vice-President from his hotel to defendant's office, but during such times did deliver a vehicle to the defendant's office.

(b) From May 30, 1955 to December 31, 1955, plaintiff did chauffeur defendant's Vice-President from his hotel to the office.

(c) On fifty per cent of the Saturdays between May 30, 1955 and December 31, 1955, plaintiff chauffeured defendant's Vice-President to the office; the remaining Saturdays during this period plaintiff delivered a vehicle to the office.

(d) On all Sundays in 1955, when working, plaintiff delivered a vehicle to defendant's office and did not chauffeur defendant's Vice-President from his hotel.

(e) From January 2, 1956 to April 27, 1956, plaintiff did not chauffeur the defendant's Vice-President from his hotel to defendant's office, but during such times did deliver a vehicle to the office.

(f) From April 30, 1956 to December 29, 1956, plaintiff did chauffeur defendant's Vice-President from his hotel to the office.

(g) From April 30, 1956 to December 29, 1956, plaintiff chauffeured defendant's Vice-President to the office on fifty per cent of the Saturdays.

(h) On all Sundays in 1956, when working, plaintiff delivered a vehicle to defendant's office and did not chauffeur defendant's Vice-President from his hotel.

(i) From December 31, 1956 to March 2, 1957, plaintiff did not chauffeur the defendant's Vice-President from his hotel to the office, but each morning did deliver a vehicle to the office. On Saturdays and Sundays, when working, plaintiff delivered a vehicle to the defendant's office.

While the stipulation does not expressly so provide, I find that plaintiff delivered a vehicle to defendant's office on all Saturdays, when working, during the years in question.

16. Based upon the foregoing findings, the stipulations herein and plaintiff's time sheets (Exhibit 1), I have concluded that:

In 1955, plaintiff worked 290 hours overtime (in excess of forty hours a week) for which he did not receive compensation. At the hourly overtime rate of $2.60, there is due to plaintiff the sum of $754 for 1955.

In 1956, plaintiff worked 300 hours overtime (in excess of forty hours a week) for which he did not receive compensation. At the hourly overtime rate of $2.81, there is due to plaintiff the sum of $843 for 1956.

In 1957, plaintiff worked 44 hours overtime (in excess of forty hours a week) for which he did not receive compensation. At the hourly overtime rate of $3.03, there is due to plaintiff the sum of $133.32 for 1957.

Accordingly, there is due to plaintiff a total of $1,730.32 in overtime compensation for the years 1955, 1956 and 1957.

17. The defendant has not shown to the satisfaction of the court that the omissions in compensation of plaintiff giving rise to this action were in good faith. Defendant, in my opinion, knew that plaintiff was working additional overtime not reflected in his time sheets. Plaintiff is, therefore, entitled to an additional sum of $1,730.32 as liquidated damages. 29 U.S.C.A. § 216(b).

### Discussion

The defendant contends:

(1) That the claim is not covered by the Fair Labor Standards Act since the defendant is not engaged in interstate commerce or in the production of goods for interstate commerce; and

(2) That the plaintiff, by submitting his time sheets without the claim for overtime and accepting payment on the normal basis, is estopped from now asserting such claim.

I conclude that the defendant is engaged in interstate commerce and in the production of goods for commerce, and that plaintiff, as an employee, was clearly engaged in such commerce and production of goods for commerce by reason of various activities as set forth in the Findings of Fact.

■ Commerce includes the transportation of passengers. Gibbons v. Ogden, 1824, 9 Wheat 1, 230–231, 6 L.Ed. 23; County of Mobile v. Kimball, 1880, 102 U.S. 691, 702, 26 L.Ed. 238; Gloucester Ferry Co. v. Com. of Pennsylvania, 1884, 114 U.S. 196, 203, 5 S.Ct. 826, 29 L.Ed. 158; McCall v. People of State of California, 1890, 136 U.S. 104, 108, 10 S.Ct. 881, 34 L.Ed. 391; Hoke v. United States, 1913, 227 U.S. 308, 320, 33 S.Ct. 281, 57 L.Ed. 523.

■ Sellers of tickets for those engaged in interstate transportation have been held to be covered by the Fair Labor Standards Act. Tobin v. Hudson Transit Lines, Inc., D.C.D.N.J., 1951, 95 F.Supp. 530, 535; Torres v. American R. Co. of Puerto Rico, D. C. Puerto Rico, 1946, 66 F.Supp. 745.

■ The fact that defendant may be an independent contractor would not militate against a determination of coverage. See Airlines Transp., Inc. v. Tobin, 4 Cir., 1952, 198 F.2d 249; Walling v. John J. Casale, Inc., D.C.S.D.N.Y., 1943, 51 F.Supp. 520.

■ The passenger tickets and travel literature and material distributed by the defendant to travel agencies in various parts of the United States constituted "goods" within the meaning of the Act, and plaintiff, by virtue of his activities for the defendant, was an employee engaged in the production of goods for commerce. See 29 U.S.C.A § 203(i) and (j); Western Union Telegraph Co. v. Lenroot, 1945, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414; Baldwin v. Emigrant Industrial Savings Bank, 2 Cir., 1945, 150 F.2d 524, 161 A.L.R. 1234, certiorari denied 326 U. S. 767, 66 S.Ct. 171, 90 L.Ed. 462; Bo-

**414**

zant v. Bank of New York, 2 Cir., 1946, 156 F.2d 787; Darr v. Mutual Life Ins. Co., D.C.S.D.N.Y., 1947, 74 F.Supp. 80.

■ The "work time" of plaintiff began when he reported at the garage in Brooklyn to obtain the defendant's vehicle and ended when he returned the vehicle to the garage and caused it to be serviced. See Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123, 5 Cir., 1943, 135 F.2d 320, rehearing denied 5 Cir., 137 F.2d 176, affirmed 321 U. S. 590, 64 S.Ct. 698, 83 L.Ed. 949.

■ The estoppel urged by defendant does not constitute a defense. Title 29 U.S.C.A. § 211(c) requires the employer to keep the records. Anderson v. Mt. Clemens Pottery Co., 1946, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515.

■ I have concluded that Section 260 of Title 29 U.S.C.A. which permits this court in its discretion to dispense with liquidated damages where a violation of the statute occurred in good faith, is inapplicable here. Defendant, in my opinion, knew that plaintiff was working additional overtime not reflected in his time sheets.

■ The plaintiff is not entitled to interest on his recovery since the statute makes no provision for interest. Clougherty v. James Vernor Co., 6 Cir., 1951, 187 F.2d 288, 293, certiorari denied 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 616; Brooklyn Savings Bank v. O'Neil, 1945, 324 U.S. 697, 715, 65 S.Ct. 895, 89 L. Ed. 1296.

Conclusions of Law

1. The court has jurisdiction over the matter in controversy and over the parties to this suit.

2. Plaintiff was an employee of the defendant during the period from January 31, 1955 to March 3, 1957.

3. Defendant during the said period was engaged in interstate commerce and in the production of goods for commerce.

4. During the said period and within the meaning of the Fair Labor Standards Act of 1938, as amended, Title 29 U.S. C.A. § 201 et seq., plaintiff, as an employee of defendant, was engaged in commerce and in the production of goods for commerce.

5. During the said period, the defendant employed plaintiff for work weeks in excess of forty hours without compensating him for all of such excess work at a rate of one and one-half times the regular rate at which he was employed, all of which was in violation of the Fair Labor Standards Act of 1938, as amended, Title 29 U.S.C.A. § 207.

6. Plaintiff is entitled to judgment against the defendant for the following sums found to be due:

(a) $1,730.32 overtime wages, as heretofore found;

(b) $1,730.32 liquidated damages (29 U.S.C.A. 216 (b));

(c) $ 600.00 counsel fees and costs as taxed.

Total.... $4,060.64

Let plaintiff submit judgment in accordance herewith and on notice to the defendant.