### MONTGOMERY WARD & CO., Inc. v. ANTIS et al.
### No. 10295.

Circuit Court of Appeals, Sixth Circuit.
Jan. 13, 1947.

---

* [4] Lavery v. Pursell, 1888, 39 Ch.D. 508, 514.

[4a] N. L. R. B. v. Hearst Publications, 322 U.S. 111, 127, 64 S.Ct. 851, 88 L.Ed. 1170.

Max Veech, of Detroit, Mich. (George Haggarty, Max L. Veech, and Dickinson, Wright, Davis, McKean & Cudlip, all of Detroit, Mich., and Stuart S. Ball, of Chicago, Ill., on the brief), for appellant.

Daniel G. Shea, of Detroit, Mich. (George Fitzgerald, of Detroit, Mich., on the brief), for appellee.

Before SIMONS, MARTIN and MILLER, Circuit Judges.

SIMONS, Circuit Judge.

Once again, as in Allesandro v. C. F. Smith Co., 6 Cir., 136 F.2d 75, 149 A.L.R. 382, and in Fletcher v. Grinnell Bros., 6 Cir., 150 F.2d 337, we are confronted with the problem of determining to what extent the employees of a chain store warehouse are within the coverage of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. A judgment for complaining employees was entered in the cause by the district court, in part accepted and satisfied by the appellant, and in part challenged by this appeal.

The appellant is a retailing corporation with more than 600 retail stores, of which four are located in the Detroit area. To stock merchandise for these four stores the appellant operates a central warehouse which, in addition to distributing merchandise to the stores, houses its service department which furnishes repair and service facilities both to the stores and retail customers and provides facilities also for deliveries of merchandise direct to customers who make their purchases at the stores. No merchandise is sold from the warehouse. The plaintiffs below were 81 employees of the central warehouse, seeking unpaid overtime compensation under the Act. They worked in many job classifications falling into three categories. The first included employees engaged in re-

ceiving, unloading, assembling and handling merchandise as it was received at the warehouse, most of it from outstate shippers, in the clerical work incidental thereto, and in factory, engineering and warehouse service for the warehouse building. The judgment awarding compensation to employees in this category has been satisfied and no issue in respect to such employees is raised by the appeal. The controversy is in respect to the status of 36 employees who, in the second category, were engaged in loading, checking and dispatching retail deliveries to customers, in receiving uncompleted retail deliveries and in the clerical work incidental thereto, and those in the third category, who were engaged in the repair ·and servicing of merchandise for the stores and their customers, and in handling the incidental clerical work. Employees engaged in transportation of goods from warehouse to stores are not here involved.

The district court held that each employee in the three categories was engaged in commerce within the meaning of the Act, that the warehouse was not a retail or service establishment within the exemptions set forth in § 13(a) (2) of the Act, and that none of the employees was engaged in a local retailing capacity within the exemption set forth in § 13(a) of the Act.

When Allesandro v. C. F. Smith Co. was decided we undertook, with great pains, to apply the decision and rationalization in Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 499, and Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468, both decided a few months before the problem was presented to us. In the Jacksonville case we were advised that goods purchased by a wholesaler upon the order of a customer with definite intention that such goods shall be carried at once to the customer, and goods obtained by a wholesaler to meet the needs of specified customers pursuant to an understanding, though not for immediate delivery, were all within the stream of commerce until delivery was made, so that employees working upon such goods were within the coverage of the Act. We were also advised that evidence that

goods based upon anticipation of the needs of specific customers rather than upon prior orders or contracts, might not at times be sufficient to establish that practical continuity in transit necessary to keep a movement of goods in commerce within the meaning of the Act. Noting that the findings disclosed that the C. F. Smith Company stocked its goods in its warehouse without previous arrangement with customers, under circumstances differing not, at all from the practice of local merchants in respect to goods for local disposition, we overruled a judgment for overtime compensation to employees engaged in delivery from warehouse to stores, as coming within the third category of the Jacksonville case. We also considered the C. F. Smith grocery chain to be a "retail establishment" under § 13(a) (2) of the Act. We thus had two bases for decision.

On March 26, 1945, however, the Supreme Court announced its decision in Phillips v. Walling, 324 U.S. 490, 65 S.Ct. 807, 808, 89 L.Ed. 1095, 157 A.L.R. 876. That case rejects the concept that a retail chain store warehouse is part of or an adjunct to a retail establishment, and while it does not expressly disapprove of the Jacksonville reasoning with respect to the third category of goods handled by a wholesaler, it undoubtedly extends the coverage of the Fair Labor Standards Act somewhat beyond the limits there laid down. Insofar as factual aspects of litigated cases come within that decision we have dutifully followed it. Grinnell Bros. v. Walling, supra. The Phillips case, in broadly interpreting the Act and narrowly construing the exemptions of § 213(a) (2), assigns to a warehouse servicing a chain of retail stores, the status and function of the conventional wholesaler, on the ground that chain store organizations have completely meshed retail and wholesale functions so that, in a realistic sense, most chain store organizations are merchandising institutions of a hybrid retail-wholesale nature with their wholesale functions physically distinct from their retail functions and performed through warehouses and central offices,—a fact that makes clear the inapplicability of § 13(a) (2) to the Phillips warehouse and central office employees.

Our difficulty in determining the full sweep of the Phillips decision comes not from what precisely was there decided, but from broad generalizations of its rationale, which doubtless in response to a commendable humanitarian purpose, reach out for a broader interpretation than specific phrasing compels, on the ground that the Act was designed to "extend the frontiers of social progress" and to implement "the announced will of the people." It accordingly arrives at the conclusion "that the warehouse and central office of petitioner's chain store system cannot properly be considered a retail establishment within the meaning of Section 13(a) (2)." [324 U.S. 490, 65 S.Ct. 808]

■ Considered as a generalization in the light of the reasoning upon which it rests, this conclusion gives us pause. It undoubtedly influenced decision below. Reflection, however, compels the view that the reasoning of the opinion must not be extended beyond the specific facts of the Phillips case, and so considered the Phillips decision does not lay down the doctrine that all employees in a building operated as a warehouse are, by reason of that fact alone, within the coverage of the Act. If their employment is in no wise concerned with the wholesaling aspect of the employer's dual or hybrid character as considered in the Phillips case, and they are engaged solely in furthering the activities of retail stores, they may not be within the coverage of the Act, for it has frequently been held by controlling authority that whether an employee is within the Act depends on his own activities, not upon those of the employer, and an employee may not be in interstate commerce or in the production of goods for commerce even though his employer clearly is. Overstreet v. North Shore Corporation, 318 U.S. 125, 132, 63 S.Ct. 494, 87 L.Ed. 656; McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. See also Phillips v. Graham Aviation, 5 Cir., 157 F.2d 443.

■ Section 13(a) (2), by its terms, exempts those employees engaged in a retail or service establishment operating primarily in local commerce. By its denial of the contention made in the Phillips case, that the retail stores, warehouse and central office of Phillips together constituted a single retail establishment within the meaning of the exemption, the court does not deny, and, in fact, specifically asserts that each retail store of the Phillips chain must be classified as a local retail establishment. By the same token a repair and service facility, even though conducted in a chain store warehouse serving retail stores as a wholesaler, is to be distinguished in its activities from the process of wholesaling when the activities of its delivery, repair and service employees are confined solely to merchandise which, physically or by sample, has already reached the retail stores and such services are rendered in respect to merchandise already sold to retail customers by the retail stores, for we assume that it is no part of the conventional function of a wholesaler to polish, repair, deliver or replace imperfect parts of retailed merchandise at the stores, or in the homes of customers or to maintain a facility for that purpose in its warehouse. If, as the cases exemplified by the Phillips decision hold, the wholesale activity of a chain store organization is within the stream of commerce until outstate merchandise is delivered to retail stores, it would seem to be implicit, in such rationalization, that interstate transportation terminates when the goods are placed on sale in a retail establishment and sold to customers thereof. No case holds otherwise.

■ If this view is sound, the employees of the appellant who were, during the period here involved, engaged in loading, checking and dispatching retail deliveries to customers, receiving back incompleted retail deliveries, handling the clerical work incidental thereto, and those engaged in the repair and servicing of merchandise for retail customers and in handling incidental clerical work, are engaged in a local retail activity. Employees in these categories are not within the coverage of the Fair Labor Standards Act.

■ It is not clear, however, from the record or findings, that employees engaged in the repair, polishing or refurbishing of

952

merchandise for delivery to customers or at the homes of customers after delivery, do not also repair and polish merchandise received in the warehouse from interstate shipments before it is offered for sale at retail. If employees there are who perform both functions, each for a substantial portion of time, the judgments in their favor will be sustained. The judgment as to others appealing must be reversed.

A collateral issue relative to attorney fees is also raised by the appeal. The court allowed attorney fees in the sum of $2,000, arriving at that amount by an allowance of $25 for each of the 80 successful plaintiffs. The appellant urges that if the judgments in favor of some are set aside that the allowance should be proportionately reduced. The question of reasonable attorney fees is clearly within the discretion of the trial court. It seems appropriate to remit decision upon this issue to the district judge. Maddrix v. Dize, 4 Cir., 153 F.2d 274.

Reversed and remanded to the district court for further proceedings consistent herewith.