**McCOMB, Adm'r of Wage and Hour Div., U. S. Dept. of Labor, v. W. E. WRIGHT CO.**

No. 10602.

Circuit Court of Appeals, Sixth Circuit
May 24, 1948.

Frederick U. Reel, of Washington, D. C. (William S. Tyson, Bessie Margolin, Frederick U. Reel, and M. Anastasia Thannhauser, all of Washington, D. C., and A. A. Caghan, of Cleveland, Ohio, on the brief), for appellant.

Robert C. Brouse, of Akron, Ohio (Edwin W. Brouse and Robert C. Brouse, both of Akron, Ohio, of counsel; Brouse, McDowell, May, Bierce & Wortman, of Akron, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The appellant Administrator sought and was denied an injunction to restrain the appellee from violating the overtime provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The appellee presented two defenses, the first being that it was not engaged in commerce within the meaning of § 7(a) of the Act, and the second that it was exempt from its provisions because it was a retail or service establishment under § 13(a) (2). The district court, sustaining the second defense, found it unnecessary to rule upon the first, and not only denied the prayer for injunction but dismissed the complaint.

The appellee is engaged at several locations in and near Akron, Ohio, in the business of selling coal, sand and gravel, paint, cinders, clay products, hardware and garden supplies, ready-mixed concrete, wall paper, heating equipment, building material, feed and seed. Its gross annual sales exceed $1,000,000. Its principal office is at 451 South Main Street, Akron, but it has other facilities both in and near the city. Approximately 15% in dollar volume of the goods it sells are received from sources outside of Ohio, but all of its sales are made within the state, approximately 79% thereof at retail. The business was organized in 1907 and expanded until the company had acquired six branch yards, but after it had converted to motor delivery four of these yards were sold. It retains its Main Street store adjacent to which it operates its general order department. To the rear of this retail store and connected with it, is the Main Street warehouse wherein its offices are located. A garage adjoins the warehouse, facing South High Street, and across High Street it operates its main supply yard from which retail sales are also made. Two miles from the Main Street address it operates another combination supply yard and retail store. A smaller yard and store three miles from its Main Street headquarters was operated until its sale during the proceedings. Five miles distant in Barberton, Ohio, it operates another small yard, warehouse and retail store. All of the yards have railroad sidings and at the High Street and Exchange Street locations that are locomotive cranes and storage and loading bins for bulk materials. While the larger yards and stores carry substantially all of the sup-

plies, the facilities are not completely independent of one another, and an order accepted at one may be filled from supplies at another.

The employees here involved are those engaged in the Main Street warehouse and in the High Street and Exchange Street yards. It was stipulated that certain of them spent 25% of their time in unloading and storing both interstate and intrastate shipments received at the warehouse or yard at which they were employed. Concluding that both the unloading and storing of goods [Montgomery Ward & Co. v. Antis, 6 Cir., 158 F.2d 948] received in interstate commerce are covered by the Act, and assuming that the mark-up on state and out-state goods does not appreciably vary, it would seem that these employees spend approximately 3.57% of their time unloading and storing goods received in interstate commerce.

■ If a substantial part of an employee's activities relates to goods whose movement is in the channels of interstate commerce, he is covered by the Act. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460. Our first question, then, is whether in view of this percentage the employees, in respect to whom the injunction was sought, are within the coverage of the Act, for it is not enough that the employer is engaged in interstate commerce, but the employee must also be engaged therein. Montgomery Ward & Co. v. Antis, supra.

■ In Mabee v. White Plains Publishing Co., 327 U.S. 178, 66 S.Ct. 511, 90 L. Ed. 607, the Supreme Court rejected a contention that a minimum amount of interstate business would eliminate an industry from the classification of those which are engaged in interstate commerce. In view of the language of § 7(a) which prohibits an employer to employ any of his employees engaged in commerce or in the production of goods for commerce, for greater work periods or for lesser pay than is provided by the Act, there would seem to be no logical distinction between employers or employees in respect to whether they are engaged in interstate commerce, based upon the extent of their contributions. Because of certain observations, however, made by the court in Walling v. Jacksonville Paper Co., supra, even though but thrown out in passing, it has been thought, as Judge Frank observed in Skidmore v. John J. Casale, Inc., 2 Cir., 160 F.2d 527, 530, that "while a minimal amount of production for shipment interstate will suffice for the purpose of classifying the employer, nevertheless it must be shown that the work of the individual employee which relates to the minimal amount forms a substantial amount of all the work done by that employee." Judge Learned Hand concurring, had some misgivings on that score, which we share. However, we are not here concerned with a minimal amount of interstate activity on the part of the appellee, for it received 15% of its supplies in interstate commerce. This, by any standard, is substantial, and there would seem to be incongruity in saying that an employer is, to a substantial degree, in interstate commerce, and that his employees who unload and store all of his interstate shipments, by work that is "constant and not sporadic," are not so engaged. Be that as it may, however, and unsatisfactory as percentage standards may be in this respect, since they are of necessity arbitrary, we conclude that the employees here involved were engaged in interstate commerce for so substantial a part of their time that there is no occasion, in view of the great social purpose of the Act and repeated admonitions that it be liberally construed to effectuate such purpose, to apply the maxim de minimis.

■ The second question in the case has given us some difficulty. The employees here considered were those at the Main Street warehouse, the High Street yard and the Exchange Street yard. Each of these places was equipped with railroad sidings, cranes and bins for the unloading and storage of bulk materials, and goods there stored were distributed to the appellee's several retail outlets. In addition, the Main Street warehouse housed the general offices and administrative departments for all of the appellee's activities. While this integration of facilities is not the con-

ventional chain-store organization where a single warehouse serves multiple retail stores, we find it impossible to avoid classifying the appellee's business as a merchandising institution "of a hybrid retail-wholesale nature" within the rationalization of A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876, and so unable to view it as a retail or servicing establishment within the exemption of § 13(a) (2) of the Act.

The court below was, of course, right when it considered each of the appellee's retail outlets as a separate establishment. While it is true that the Wage and Hour Administrator, in Interpretive Bulletin No. 6, recognized that the absence of certain characteristics of retail establishments in the conduct of coal, lumber and building supply yards does not destroy their character as retail establishments when they serve the consuming public directly, the bulletin does not, however, bear upon the question whether warehouses or storage yards serving multiple retail facilities are themselves retail establishments, and there is no need here to decide whether a retail store, stocking merchandise in excess of its own current demand, comes within the hybrid characterization of the Phillips case.

The district court was of the view that the nature of the bulk products handled by the appellee, made it necessary to maintain railroad sidings and adjacent storage bins, and that those dealing in such products never were wholesalers in the commodities in the sense that the Supreme Court referred to wholesalers of grocery products in the Phillips case. It took judicial notice of the custom of most dealers in coal and building supplies to procure these materials by the carload, store them and deliver them direct from yard to customers as orders are received. This view, however, ignores what was said to be the "essential key to the problem" presented in the controlling case, where wholesale functions are performed through warehouses and central offices. The assumption below that the character of the appellee's business is not such as is usually conducted by wholesalers, gives us pause. The concept of wholesaling has, however, now been broadened in respect to the scope of the exemption, by applying it to all sales that are not essentially and inescapably retail in Roland Electrical Co. v. Walling, 326 U.S. 657, 667, 671, 66 S.Ct. 413, 90 L.Ed. 383. The reasoning that contributed to the Phillips conclusion that wholesale activities, as there interpreted, give warehouses a competitive advantage in labor costs over independent wholesalers, is not to be ignored. While there is no evidence that those dealing in hardware, coal, paints and building supplies never are wholesalers, the court assumed the fact. We doubt that, absent such evidence, judicial notice may be taken of an economic situation of this nature, and doubt also the verity of the assumption, since even a casual inspection of the classified pages of the telephone directory lists numerous wholesalers of hardware, paints, lumber and building supplies. We see no escape from the application of the Phillips decision as applied to the appellee's business integration.

Reversed and remanded for further proceedings consistent herewith.