**SUCRS. DE A. MAYOL & CO., Inc., Defendant, Appellant,**

v.

**James P. MITCHELL, Secretary of the United States Department of Labor, Plaintiff, Appellee.**

**No. 5525.**

United States Court of Appeals First Circuit.

Heard Feb. 2, 1960.

Decided June 30, 1960.

---

Orlando J. Antonsanti, San Juan, P. R., with whom Alberto J. Torruella, San Juan, P. R., was on brief, for appellant.

Bessie Margolin, Asst. Solicitor, Washington, D. C., with whom Harold C. Nystrom, Acting Solicitor of Labor, and Sylvia S. Ellison and Beate Bloch, Attys., U. S. Dept. of Labor, Washington, D. C., and Kenneth P. Montgomery, Regional Atty., San Juan, P. R., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This action was brought by the Secretary of Labor under section 15(a) (2) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219, in the District Court for the District of Puerto Rico to enjoin defendant from violating the minimum wage and overtime provisions of the act with respect to employees who (a) ordered, made payments for, and kept records of goods received from outside of Puerto Rico; (b) operated its telephone switchboard; (c) received, checked and stored goods awaiting sale and later distribution in Puerto Rico; (d) performed custodial and janitorial service. Defendant conceded at the trial that with respect to many of its employees, it had not met the minimum wage and overtime requirements of the act, but denied that its operations were subject to it. The court issued an injunction, accompanying it with an opinion resolving all issues against the defendant.

Defendant, is engaged in the importation and distribution of hardware, paint, plumbing, miscellaneous building supplies, electrical fixtures, furniture, household equipment, and other goods, in San Juan, Puerto Rico. It has two warehouses. In another building it has its store and office, and additional warehouse facilities. Eighty per cent of the goods sold come from the continental United States. The two questions presented are whether the employees mentioned are "engaged in commerce" within the meaning of the act with respect to these goods, and, if so, whether defendant is exempt under section 13(a) (2) as a " 'retail * * * establishment' * * * 75 per centum of whose annual dollar volume of sales of goods * * * is not for resale and is recognized as retail sales * * * in the particular industry." Defendant also complains of the form of the injunction.

Defendant's imported merchandise arrives at the docks in packages consigned to it. These are delivered to its warehouses by an independent trucker. In one warehouse the trucker's employees place the packages in an elevator; in

the others they are placed inside the door on the floor of the building. The packages are opened by defendant's employees, who then transport the goods to the appropriate storerooms.[1] In the building containing the elevator the individual goods are checked against invoices in the storerooms. In the others the checking is done before delivery to the rooms. The court held that every employee concerned with the goods up through the point of placing them in the shelves came under the act.

The first question requires a finding of what employees, if any, perform operations which can be considered to be "in commerce." McLeod v. Threlkeld, 1943, 319 U.S. 491, 497, 63 S.Ct. 1248, 87 L.Ed. 1538; A. B. Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 524, 62 S.Ct. 1116, 86 L.Ed. 1638. This, in turn, depends on the limits of interstate or "foreign" movement. We accept the view that interstate commerce ceases when the goods come to rest. See, e. g., Mitchell v. Livingston & Thebaut Oil Co., Inc., 5 Cir., 1958, 256 F.2d 757, 760; James V. Reuter, Inc. v. Walling, 5 Cir., 1943, 137 F.2d 315, 318, reversed on other grounds 1944, 321 U.S. 671, 64 S.Ct. 826, 88 L.Ed. 1001. The difficulty arises in defining the resting point. The Supreme Court has made it apparent that commerce carries through any "temporary pause," and continues until the originally contemplated journey reaches its end. Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 568, 63 S.Ct. 332, 87 L.Ed. 460. In that case the court held that various employees connected with the handling of interstate goods within a warehouse were in commerce because the goods did not come to rest until the completion of a further journey beyond it. In other words, commerce continued *through* the warehouse. In the case at bar commerce clearly ended *at* the warehouse. The question presented, therefore, is where, *within* the warehouse, the goods come to rest in such a way as to terminate the flow of commerce. Singularly, this question has seldom been considered. It is true that one court has held that, "Since upon delivery of the goods at defendant's warehouse, interstate movement has ceased, employees concerned solely with subsequent moving and storing of the goods in the warehouses are not in commerce." Walling v. Goldblatt Bros., Inc., 7 Cir., 1942, 128 F.2d 778, 783, certiorari denied 318 U.S. 757, 63 S.Ct. 528, 87 L.Ed. 1130. Even there, however, the court's attention seems to have been focused on the question of whether the goods came to rest at the warehouse, or only later at the retail stores to which they were eventually delivered. 128 F.2d at pages 782–783. If the court did specifically consider the present question, it at least gave no reason why the line should be drawn at the point where the goods entered the building.

In Domenech v. Pan American Standard Brands, Inc., 1 Cir., 1945, 147 F.2d 994, 995, we observed that "the 'state of rest' doctrine . * * * holds that the interstate journey ends when the goods come to rest in the wholesaler's warehouse and are intermingled with the mass of property there." Cf. " * * * after the property has arrived and has become commingled with the mass of property within the state." A. L. A. Schechter Poultry Corp. v. United States, 1935, 295 U.S. 495, 543, 55 S.Ct. 837, 849, 79 L.Ed. 1570. The journey obviously does not terminate simply when the destined owner takes possession (or defendant could solve all its troubles by sending a single employee to the pier), nor should it when the property crosses some particular threshold. In our opinion the placement of a shipment in an elevator, or on the floor by a doorway, results in only a "temporary pause." We believe we were correct in Domenech in stating that the mingling with other goods in the warehouse is the event which brings about a state of rest, and

---

1. Certain special, or "prior," orders are set apart for the customers. Much of defendant's brief is an attempt to show that the district court erred with respect to these orders. We do not reach that subject.

that this occurs when the goods have been placed in their intended destination, as stock. Cf. McComb v. W. E. Wright Co., 6 Cir., 1948, 168 F.2d 40, 42, certiorari denied 335 U.S. 854, 69 S.Ct. 83, 93 L.Ed. 402. It follows that the court properly concluded that those employees concerned with receiving, checking, and storing goods within the warehouse are "engaged in commerce."

Under these circumstances no difficulty arises with respect to the other classifications of employees which the court found to be directly connected with these goods while they were in commerce: (a) clerical help concerned with interstate shipments, Mitchell v. E. G. Shinner & Co., 7 Cir., 1955, 221 F.2d 260; Montgomery Ward & Co., Inc. v. Antis, 6 Cir., 1947, 158 F.2d 948, certiorari denied 331 U.S. 811, 67 S.Ct. 1202, 91 L.Ed. 1831; cf. Walling v. Goldblatt Bros., Inc., supra; (b) telephone operator, Mitchell v. Joyce Agency, Inc., 1955, 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740, reversing 7 Cir., 1954, 211 F.2d 241, and affirming Durkin v. Joyce Agency, Inc., 1953, D.C. N.D.Ill., 110 F.Supp. 918; Mitchell v. E. G. Shinner & Co., supra; (d) custodial employees in warehouses, Crook v. Bryant, 4 Cir., 1959, 265 F.2d 541; see Overstreet v. North Shore Corp., 1943, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656.

We turn, therefore, to defendant's claim of exemption on the ground that "75 per centum of [its] annual dollar volume of sales of goods * * * is not for resale and is recognized as retail sales * * * in the particular industry." Section 13(a) (2), 29 U.S.C.A. § 213(a) (2).[2] On this the burden is on the defendant. Arnold v. Ben Kanowsky, Inc., 1960, 361 U.S. 388, 393–394, 80 S.Ct. 453, 4 L.Ed.2d 393. Admittedly 21.6% of defendant's annual sales were to retailers for resale; at least 3.6% more were to building contractors for pur-

poses other than "residential or farm building construction, repair, or maintenance"; 4.1% were to building contractors for those particular purposes; and 7.7% were made to government agencies under contract. In view of the admitted 21.6%, defendant must show that each of these other categories was not for resale, and, in addition, was recognized as retail in the particular industry.

In Ben Kanowsky the court held that parts sold to a manufacturer to be incorporated into airplanes to be sold as finished products were sold "for resale." 361 U.S. at page 394. It found in section 3(n) of the act, (" 'Resale' shall not include the sale of goods to be used in residential or farm building construction, repair, or maintenance,") 29 U.S. C.A. § 203(n), "an intent to classify other sales for use in articles to be sold as 'resale.' " 361 U.S. at page 394, note 10, 80 S.Ct. at page 457. We see no difference between the resale of a completed article containing a defendant's parts, and the incorporation of a defendant's material, no doubt at a price,[3] into the property of a contractor's customers. Consequently, another 3.6% must be added to the admitted 21.6% of defendant's goods which were sold for resale. The defendant's case, accordingly, falls before we reach some potentially interesting questions raised by the court's exclusion of defendant's proffered expert testimony as to the nature of the remaining contested categories.

There remains a question as to the form of the injunction. Defendant objects that the wording is general and fails to specify particular employees or particular employments. It is true that civil contempt may result even though the defendant has acted in good faith. McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599. But this is not to say that

---

2. For present purposes we are assuming, in defendant's favor, that in all other respects it is a "retail establishment" qualified to claim this exemption.

3. Cf. Mitchell v. Sherry Corine Corp., 4 Cir., 1959, 264 F.2d 831, certiorari denied

360 U.S. 934, 79 S.Ct. 1453, 3 L.Ed.2d 1546, where sale of food to an airline for consumption by passengers was held to be for resale even though there was no separate specific charge made for food.

an injunction may not be couched in general terms. Particularly is this proper where a defendant is independently advised of what the court means to include. The district court's supporting opinion here made clear which activities were found to be covered. That the defendant understood the scope of the injunction is evidenced by the fact that the description of these activities in the first sentence of our opinion was lifted bodily from defendant's brief. Some compromise must be effected in a decree between the need for articulation, and the need for sufficient comprehensiveness to prevent "easy evasion." McComb v. Jacksonville Paper Co., 1949, supra, 336 U.S. at page 193, 69 S.Ct. at page 500; see Aetna Finance Co. v. Mitchell, 1 Cir., 1957, 247 F.2d 190. The objection to the form of the injunction is without merit.

Judgment will be entered affirming the judgment of the District Court.

Hutcheson, Circuit Judge, dissented in part.