For the reasons hereinabove set forth, the motion to dismiss the complaint is granted.

STATE OF NEW JERSEY, PLAINTIFF, v. COMFORT CAB, INC., DEFENDANT.

Bergen County Court
Law Division—Criminal

Decided January 17, 1972.

*Mr. Adam H. Lawrence,* Assistant Prosecutor, argued the cause for plaintiff (*George F. Kugler, Jr.,* Attorney General, attorney).

*Mr. Robert S. Dickstein* for defendant.

KOLE, J. C. C. This case involves a novel question of the relationship between the Federal Fair Labor Standards Act and the New Jersey Wage and Hour Law.

Defendant Comfort Cab, Inc. moved to dismiss three indictments against it charging violations of the New Jersey statutes relating to employees' wages and hours, basically the New Jersey Wage and Hour Law enacted in 1966:

(1) Indictment S–1033–71, charging defendant in 616 counts with failure to pay minimum and overtime rates, in violation of *N. J. S. A.* 34:11–56a4 and 34:11–56a22.

(2) Indictment S–1031–71, charging defendant in 20 counts of failure to keep true and accurate records of hours worked by employees, in violation of *N. J. S. A.* 34:11–56a20 and 34:11–56a22.

(3) Indictment S–1032–71, charging defendant in 47 counts of withholding and diverting wages, in violation of *N. J. S. A.* 34:11–4.4 and 34:11–4.10.

Defendant, a taxicab company, contends that the Federal Government has preempted the field of wages and hours relating to its employees by enactment of the Fair Labor Standards Act, 29 *U. S. C. A.* § 201 *et seq.,* and that, therefore, the New Jersey statutes claimed to be violated do not apply to it. Defendant claims that since it is "engaged in commerce" within the meaning of the Federal Fair Labor Standards Act, and since that act is exclusively applicable to it, it is not subject to the New Jersey statute, the New Jersey court is without jurisdiction and, therefore, the indictments should be dismissed. It also argues that even if the New Jersey, rather than federal, law applies, it is exempt under the provisions of the New Jersey statutes, and for that reason the indictments should be dismissed.

■■ Ordinarily an indictment should not be dismissed unless its insufficiency is palpably shown. *State v. McDowney,* 49 *N. J.* 471, 474 (1967); *State v. Weleck,* 10 *N. J.* 355, 364 (1952); *State v. Ferrante,* 111 *N. J. Super.* 299, 304 (App. Div. 1970). Jurisdiction is an essential element which, if lacking, may lead to a palpably shown insufficiency, *State v. McDowney, supra.*

The State contends, citing *Buck v. California,* 343 *U. S.* 99, 72 *S. Ct.* 502, 96 *L. Ed.* 777 (1951), reh. den. 343 *U. S.* 932, 72 *S. Ct.* 756, 96 *L. Ed.* 1341 (1952), that defendant was not involved in interstate commerce and, accordingly, the Federal Fair Labor Standards Act is inapplicable.

The defendants in *Buck* were charged with failing to obtain permits required by a county through which their cabs operated, though passengers were neither picked up nor discharged in that county. The Supreme Court upheld the county's permit requirement and found that the regulation was not an unreasonable burden on foreign commerce. The taxicab company operated on an axis between the United States and Mexico.

*Buck* concerned licensing regulations and thus may be distinguished from the present case where the question is of inclusion or exclusion under a specific federal statute.

Further, the court found that local licensing regulations on a local business such as taxicabs was not a burden on foreign commerce *in the absence of federal regulation.*

The question is not whether Comfort Cab is involved in interstate commerce, but rather whether it is "engaged in commerce" within the general meaning of the federal act. 29 *U. S. C. A.* § 206(a); 29 *U. S. C. A.* § 207(a). "Commerce" is defined in the act as "trade, commerce, *transportation,* transmission or communication among the several States or between any State and any place outside thereof." 29 *U. S. C. A.* § 203(b) (emphasis added). *Caserta v. Home Lines Agency, Inc.,* 172 *F. Supp.* 409, 413 (S. D. N. Y. 1959).

The reach of the federal act is less than the constitutional reach of the Commerce Clause. *Mitchell v. H. B. Zachry Co.,* 362 *U. S.* 310, 80 *S. Ct.* 739, 4 *L. Ed.* 2d 753, 758–759 (1960). Until 1961 coverage under the act depended upon the nature of the employees' duties, not whether the employer's business was local or interstate. *Mitchell v. H. B. Zachry Co., supra.* In 1961 Congress additionally awarded coverage to "fellow employees of any employee who would have been protected by the original Act." *Pub. L.* 87–30, § 2(c). This amendment, however, did not enlarge the class of employers subject to the act. *Maryland v. Wirtz,* 392 *U. S.* 183, 188, 88 *S. Ct.* 2017, 2020, 20 *L. Ed.* 2d 1020, 1026 (1968).

The Supreme Court has "recognized that the penetrating and elusive duty which this Act casts upon the courts to define in particular cases the less-than-constitutional reach of its scope, cannot be adequately discharged by talismanic or abstract tests, embodied in tags or formulas." *Mitchell v. H. B. Zachry Co., supra,* 362 U. S. at 313, 80 S. Ct. at 742, 4 *L. Ed.* at 758. However, general guidelines have been provided:

The question whether an employee is engaged 'in commerce' within the meaning of the present [Federal Fair Labor Standards] Act is determined by practical considerations, not by technical conceptions

\* \* \*. The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than local isolated activity. [*Mitchell v. O. W. Vollmer & Co.*, 349 *U. S.* 427, 429, 75 *S. Ct.* 860, 99 *L. Ed.* 1196, 1200 (1955)]

It has also been said:

The practical test to be applied is whether, without the particular service, interstate commerce would be impeded or abated. Great remoteness, however, renders the act inapplicable. (Citations omitted). [*Republic Pictures Corporation v. Kappler*, 151 *F.* 2d 543, 545 (8 Cir. 1945)]

Since, as previously discussed, under a 1961 amendment the coverage of any employee by the pre-1961 act mandates coverage for all his fellow employees, Comfort Cab would appear to be covered by the federal act if a substantial part of any of its employees' activities relate to interstate commerce. *Kirshbaum Co. v. Walling,* 316 *U. S.* 517, 62 *S. Ct.* 1116, 86 *L. Ed.* 1638 (1941); *Walling v. Jacksonville Paper Co.,* 317 *U. S.* 564, 63 *S. Ct.* 332, 87 *L. Ed.* 460 (1942). "Substantial part" has been found as low as 3.57% of an employee's total worktime, in *McComb v. W. E. Wright,* 168 *F.* 2d 40 (6 Cir. 1948), and 5% in *Wirtz v. Dunmire,* 239 *F. Supp.* 374 (W. D. La. 1965).

Defendant contends that it is "engaged in commerce" within the meaning of the federal act, and further claims that as such it is covered by the provisions of that act regarding minimum wage and overtime. Accordingly, it contends that the like New Jersey regulations have been preempted by the federal act with regard to parties so engaged in commerce.

The United States Constitution gives Congress the exclusive power "to regulate commerce \* \* \* among the several States, \* \* \*." Art. I, Sec. 8, Cl. 3. However, exercise of New Jersey's police power, a concurrent power derived from the Tenth Amendment's reservation to the States of powers not delegated to the Federal Government nor pro-

hibited to the States, "will be sustained even though it may affect interstate commerce incidentally so long as it does not unduly burden it." *Moyant v. Paramus,* 30 *N. J.* 528, 549 (1959) ; *Burton v. Sills,* 99 *N. J. Super.* 516, 526 (Law Div. 1967), aff'd 99 *N. J. Super.* 459 (1968), aff'd 53 *N. J.* 86 (1968), app. dism. 394 *U. S.* 812, 89 *S. Ct.* 1486, 22 *L. Ed.* 2d 748 (1969) ; *Head v. New Mexico Board of Examiners,* 374 *U. S.* 424, 83 *S. Ct.* 1759, 10 *L. Ed.* 2d 983, 987–988 (1963) ; *Huron Portland Cement Co. v. Detroit,* 362 *U. S.* 440, 80 *S. Ct.* 813, 4 *L. Ed.* 2d 852 (1960). An actual conflict between state and federal laws is governed by the "Supremacy Clause," which dictates that "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof * * * shall be the supreme Law of the Land * * *." Art. VI, Sec.. 2. Regulation by the State of the wages and hours of employees working in the State is obviously an exercise of its police power. See *New Jersey State Hotel-Motel Ass'n v. Male,* 105 *N. J. Super.* 174 (App. Div. 1969).

The indictments relevant herein charge offenses allegedly committed between December 31, 1966 and December 25, 1968. During a portion of this time-period both driver and nondriver employees of defendant Comfort Cab were exempt from sections of the federal act covering minimum wage and maximum hour/overtime rates, but were covered by the like sections of the New Jersey law. Defendant claims that an exemption in the federal act preempts any such state regulation.

█ Preemption is governed by the intent of Congress regarding the federal act. *Huron Portland Cement Co. v. Detroit, supra,* involving an alleged conflict between federal licensing of steam vessels and a local smoke abatement ordinance, held as follows :

In determining whether state regulation has been pre-empted by federal action, 'the intent to supersede the exercise by the State of its police power as to matters not covered by the Federal legislation is not to be inferred from the mere fact that Congress has seen fit to

circumscribe its regulations and to occupy a limited field. In other words, such intent is not to be implied unless the act of Congress, fairly interpreted, is in actual conflict with the law of the state.' [362 U. S. at 443, 80 S. Ct. at 816, 4 L. Ed. 2d at 856; citations omitted]

The problem was further distilled in *Florida Lime & Avocado Growers v. Paul*, 373 *U. S.* 132, 83 *S. Ct.* 1210, 10 *L. Ed.* 2d 248 (1963), which concerned a possible federal and state agricultural standards conflict:

The principle to be derived from our decisions is that federal regulations of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakenly so ordained. [373 U. S. at 142, 83 S. Ct. at 1217, 10 L. Ed. 2d at 257]

*Cf. B. R. Waldron & Sons Co., Inc. v. Milk Control Board*, 131 *N. J. L.* 267, 272 (Sup. Ct. 1944), aff'd 131 *N. J. L.* 388 (E. & A. 1944) ; *N. J. Bell Tel. Co. v. Communications Workers, etc.*, 5 *N. J.* 354, 366 (1950).

Does an exemption of coverage for a particular occupation in the federal act mean that Congress has "unmistakenly ordained" that state regulation has been preempted and the State may not act for the benefit of those exempt occupations? The Congress has offered no suggestion that such is the case. Rather, a clear intent to permit state control is manifested by § 18 of the federal act (29 *U. S. C. A.* § 218(a)) :

No provision of this Act * * * shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this Act, or a maximum workweek lower than the maximum workweek established under this Act * * *.

While this statute does not specifically address itself to state coverage of federally exempt occupations, it certainly does not permit the conclusion that the Congress has "un-

mistakenly ordained" that an exemption in the federal act preempts state action in that area.

Accordingly, the federal act exemptions do not preempt or preclude applicability of the New Jersey statutory provisions covering such federally exempt occupations as are here involved. The New Jersey law, therefore, governs these occupations. *Cf. Johnson v. Christ Hospital,* 84 *N. J. Super.* 541, 545 (Ch. Div. 1964), aff'd 45 *N. J.* 108 (1965).

Congress did unmistakenly intend, however, that certain taxicab company employees be exempt from particular provisions of the federal act. A 1949 amendment to the Fair Labor Standards Act, 29 *U. S. C. A.* § 213(a)(12) (Oct. 26, 1949, c. 736, § 11, 63 *Stat.* 917), exempted from the provisions of 29 *U. S. C. A.* §§ 206 (minimum wage) and 207 (maximum hour/overtime), "any employee of an employer engaged in the business of operating taxicabs." See *U. S. Code & Cong. Service,* 1949, at p. 2269. The latest amendment, enacted September 25, 1966, effective February 1, 1967, 29 *U. S. C. A.* § 213(b)(17) (Pub. L. 89–601, §§ 203(c), 204(b), 206(b)(2), 210(b)), exempts only, "any driver employed by an employer engaged in the business of operating taxicabs," and then solely from the maximum hour/overtime provisions of 29 *U. S. C. A.* § 207. See *U. S. Code & Cong. & Admin. News,* 1966, at p. 3016(7). Therefore, between 1949 and January 31, 1967 all taxicab company employees, including drivers, were exempt from both the minimum wage (§ 206) and maximum hour/overtime (§ 207) provisions of the federal act. Since February 1, 1967, however, all these employees (except taxicab drivers) have been covered by the federal act's minimum wage and maximum hour/overtime regulations. Since February 1, 1967 taxicab company *drivers* have been exempt from only the maximum hour/overtime provision (§ 207), but have been covered by the minimum wage (§ 206) provision.

The New Jersey Wage and Hour Law, *N. J. S. A.* 34:11–56a, *et seq.,* which prescribes minimum wage and maximum hour/overtime rates in *N. J. S. A.* 34:11–56a4, was enacted

June 17, 1966 to become effective 180 days following, *i. e.,* December 14, 1966. The indictments here charge violations between December 31, 1966 and December 25, 1968. The New Jersey law is applicable to the offenses charged in the indictments regarding employees of Comfort Cab during a period when such employees were exempt from parallel coverage in the federal act since, as previously discussed, taxicab company employee exemptions in the federal act do not preempt state action in this occupational area. Thus, the New Jersey law governed minimum wage and maximum hour/overtime rates (*N. J. S. A.* 34:11–56a4) violations regarding *all* employees of Comfort Cab between December 31, 1966 and January 31, 1967, since during such period these employees were exempt from the parallel provisions of the federal act, 29 *U. S. C. A.* § 206 (minimum wage) and 29 *U. S. C. A.* § 207 (maximum hours/overtime). Further, since *driver* employees were exempt from 29 *U. S. C. A.* § 207 (maximum hours/overtime) during the entire period covered by the indictments, December 31, 1966 to December 25, 1968, the New Jersey law's maximum hour/overtime provision (contained in *N. J. S. A.* 34:11–56a4) was applicable to such violations concerning drivers during that entire time period.

As to violations not governed by a statutory exemption in the federal act, the New Jersey law also applied. The federal act amendments of 1966, previously discussed, ended the taxicab company employee exemptions from the minimum wage (§ 206) and the maximum hour/overtime (§ 207) provisions of the federal act, except that taxicab *drivers* remained exempt from only the maximum hours/overtime provision of the federal act. Therefore, between February 1, 1967, the effective date of the amendments of 1966, and December 25, 1968, the last date of violations alleged in the indictments, *all* employees of Comfort Cab were covered by the minimum wage provision of both the federal act (§ 206) and the New Jersey law (*N. J. S. A.* 34:11–56a4), while its nondriver employees only, were cov-

ered by the maximum hour/overtime regulations of both the federal act (§ 207) and the New Jersey law (*N. J. S. A.* 34:11–56a4) during this period.

Anticipating such an apparent conflict between the federal act and similar state legislation, the Congress provided in 29 *U. S. C. A.* § 218(a) (heretofore referred to) for enforcing compliance with a state minimum wage higher and a state "maximum workweek" lower than that established by the federal act, *i. e.*, the statute specifically prohibits preemption, by the federal act, of any state minimum wage or maximum hour/overtime ("maximum workweek") provision more favorable to the employee than that prescribed by the federal act.

During this period, February 1, 1967 to December 25, 1968, the New Jersey law (*N. J. S. A.* 34:11–56a4) established a higher minimum wage applicable to defendant's employees than that set by the parallel regulation in the federal act (29 *U. S. C. A.* § 206(b)). Thus, pursuant to 29 *U. S. C. A.* § 218(a) the higher minimum wage established by the New Jersey statute is applicable and this court has jurisdiction over violations thereof. The higher New Jersey minimum wage is illustrated by a comparison of the minimum wage provisions of the federal and New Jersey statutes applicable to employees of defendant during this period. (See Appendix 1).

During this period, February 1, 1967 to December 25, 1968, the maximum hour/overtime provision of the New Jersey law (*N. J. S. A.* 34:11–56a4) also is more favorable to nondriver employees of defendant than that set by the federal act (29 *U. S. C. A.* § 207(a)(2)). (See Appendix 2).

The federal act, 29 *U. S. C. A.* § 218(a), mandates compliance with a state maximum workweek requirement lower than that set by the federal act. Though "workweek" is not defined in the federal act, it is clearly the intent of the Congress that a lower state maximum hour regulation, creating an overtime arrangement more favorable to the employee than that contained in § 207 of the federal act, should

prevail. Such an interpretation is dictated by the plain meaning of the statutory language. "Maximum workweek" does not in fact limit the number of hours an employee may work. *Missel v. Overnight Motor Transp. Co.*, 126 *F*. 2d 98, 104 (4 Cir. 1942), aff'd 316 *U. S*. 572, 62 *S. Ct*. 1216, 86 *L. Ed*. 1682 reh. den. 317 *U. S*. 706, 63 *S. Ct*. 76, 87 *L. Ed*. 563. It must refer to that number of excess hours worked for which an overtime rate must be paid. This conclusion is further evidenced by the utilization of the term "workweek" in 29 *U. S. C. A*. § 207, where it is used in reference to the number of hours worked in excess of which the overtime rate must be paid. See, *e. g.*, 29 *U. S. C. A*. § 207(a) (2)(A). The term "maximum workweek" in 29 *U. S. C. A*. § 218(a) is thus synonymous with maximum hour/overtime. Accordingly, the requirement of 29 *U. S. C. A*. § 218(a) that a lower state maximum workweek be enforced mandates the enforcement of a state maximum hours/overtime provision more favorable to the employee than that set by the federal act. Since, as indicated, this State's maximum hour/ overtime provision (*N. J. S. A*. 34:11–56a4) does so favor employees, that statute is applicable to defendant's non-driver employees for the period February 1, 1967 to December 25, 1968, and the court has jurisdiction over violations thereof.

 Thus, whether the employees of defendant were exempt under the federal act or were covered thereby, for the foregoing reasons I hold that during the entire period covered by the indictments, December 31, 1966 to December 25, 1968, the minimum wage and maximum hour/overtime provisions of the New Jersey Wage and Hour Law contained in *N. J. S. A*. 34:11–56a4 were applicable to all of defendant's employees. Accordingly, the court has jurisdiction over the indictments charging violations thereof.

 Defendant further contends that even if the New Jersey Wage and Hour Law is generally applicable in the present situation, it is exempt from the "overtime" provisions, since it falls within the exception which states that

"The provisions of this section [*N. J. S. A.* 34:11–56a4] for the payment to an employee of not less than 1½ times such employee's regular hourly rate for each hour of working time in excess of 40 hours * * * in any week shall not apply to * * * an employee of a common carrier of passengers by motor bus * * *." Taxicabs, it claims, are such common carriers of passengers by motor bus.

Defendant cites uses of "omnibus" and "autobus" in other New Jersey statutes in support of his contention. However, *N. J. S. A.* 39:1–1, defining "omnibus" as including "* * * all motor vehicles used for the transportation of passengers for hire, except school buses * * *" pertains exclusively to the Motor Vehicle and Traffic Act; and *N. J. S. A.* 48:4–1, subd. a, excepting taxicabs from the meaning of "autobus," pertains to a particular chapter of the Public Utilities Law. Neither statute, therefore, sheds any light on the meaning of "motor bus" contained in the State Wage and Hour Law, an enactment with entirely different purposes.

Both the New Jersey Wage and Hour Law and the Federal Fair Standards Labor Act are humanitarian and remedial legislation. *N. J. S. A.* 34:11–56a. *Tennessee C. I. & R. Co. v. Muscoda Local 123,* 321 *U. S.* 590, 64 S. Ct. 698, 88 *L. Ed.* 949, 956 (1943). The United States Supreme Court, in *Phillips v. Walling,* 324 *U. S.* 490, 493, 65 S. Ct. 807, 808, 89 *L. Ed.* 1095, 1098–1099 (1945), which concerned the Federal Fair Labor Standards Act, stated that "Any exemption from such humanitarian and remedial legislation must * * * be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress."

Moreover, there is no reason for giving the term "motor bus" in the foregoing exemption any meaning other than ordinarily given to the term. "Motor bus" normally does not include a taxicab.

The *Random House Dictionary* defines "motor bus" as a "passenger *bus* powered by a motor;" "bus" as "a large motor

vehicle with a long body equipped with seats or benches for passengers, usually operated as part of a scheduled line;" and "taxicab" as a public passenger vehicle, esp. an automobile, usually fitted with a taximeter."

Thus, the statutory exemption for a motor bus, which is to be strictly and narrowly construed as well as defined by its ordinary and plain meaning, does not include "taxicabs."

In view of the foregoing, the motion to dismiss indictment S–1033–71 is denied.

In addition to violations of *N. J. S. A.* 34:11–56a4 ("Minimum rate; overtime rate") and its applicable penalty provision, *N. J. S. A.* 34:11–56a22 (Indictment S–1033–71), defendant has been indicted for violations of *N. J. S. A.* 34:11–56a20 ("Record by employer of hours worked and wages") and its penalty provision *N. J. S. A.* 34:11–56a22 (Indictment S–1031–71) and *N. J. S. A.* 34:11–4.4* ("Witholding or diverting wages"), and its penalty provision, *N. J. S. A.* 34:11–4.10* (Indictment S–1032–71).

The motions to dismiss these indictments are likewise denied. Each covers statutory provisions that are intimately connected with the minimum and overtime rate provisions of Indictment S–1033–71, which, for the reasons heretofore given, cover defendant's employees and over which this court has jurisdiction.

## APPENDIX 1

*N. J. S. A.* 34:11–56a4 reads, in relevant part, as follows:

Every employer shall (a) on and after the expiration of 180 days following the day of enactment of this act pay to each of his employees wages at a rate of not less than $1.25 per hour, and (b) on and after January 1, 1968 at a rate of not less than $1.40 per hour.

The parallel provision of the Fair Labor Standards Act applicable to employees of Comfort Cab, 29 *U. S. C. A.* § 206 (b), is as follows:

---

*Enacted *L.* 1965, c. 173 §§ 4 and 10.

(b) Every employer shall pay to each of his employees * * * who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this section by the amendments made to this chapter by the Fair Labor Standards Amendments of 1966, wages at the following rates:

(1) not less than $1 an hour during the first year from the effective date of such amendments.

(2) not less than $1.15 an hour during the second year from such date.

* * * * * * * *

Following is a collation of the minimum wages set by the New Jersey Wage and Hour Law and the Federal Fair Labor Standards Act during the period both were applicable to all employees of defendant Comfort Cab, between February 1, 1967 and December 25, 1968.

1. *February 1, 1967 — December 31, 1967*

*State* — $1.25 an hour

The New Jersey Wage and Hour Law, enacted June 17, 1966 and effective 180 days following, December 18, 1966, set the minimum wage for all employees covered by the law at $1.25 an hour from the effective date of the law until December 31, 1967. *N. J. S. A.* 34:11–56a4.

*Federal* — $1.00 an hour

Prior to February 1, 1967 all employees of taxicab companies were exempt from the minimum wage provisions of the federal act. February 1, 1967 is the effective date of the 1966 amendments which prescribed the foregoing minimum wage for those workers, such as employees of taxicab companies, brought under the provisions of § 206 by the amendments of 1966. This rate is applicable until January 31, 1968. 29 *U. S. C. A.* § 206(b)(1).

2. *January 1, 1968 — January 31, 1968.*

*State* — $1.40 an hour

The aforementioned New Jersey Wage and Hour Law fixes the minimum wage at this amount between January 1, 1968 and December 31, 1968. *N. J. S. A.* 34:11–56a4.

*Federal* — $1.00 an hour.

As in paragraph 1 above.

3. *February 1, 1968 — December 25, 1968.*

 *State* — $1.40 an hour.

As in paragraph 2 above.

 *Federal* — $1.15 an hour

29 *U. S. C. A.* § 206(b)(2) provides for such a minimum wage applicable February 1, 1968 to January 31, 1969.

Thus, the New Jersey minimum wage is higher than the minimum wage applicable to all the employees of Comfort Cab set by the Fair Labor Standards Act during the period February 1, 1967 to December 25, 1968. 29 *U. S. C. A.* § 218(a) requires that the higher minimum wage applies. Accordingly, during this period the New Jersey law as to minimum wage applies to all employees of Comfort Cab.

## APPENDIX 2

The relevant section of the federal act, 29 *U. S. C. A.* § 207(a)(2), is as follows:

(2) No employer shall employ any of his employees * * * who * * * is brought within the purview of this subsection by the amendments made to this Act by the Fair Labor Standards Amendments of 1966 —

 (A) for a workweek longer than forty-four hours during the first year from the effective date of the Fair Labor Standards Amendments of 1966,

 (B) for a workweek longer than forty-two hours during the second year from such date * * *

unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

The New Jersey overtime/maximum hour regulation, *N. J. S. A.* 34:11–56a4, is as follows:

Every employer shall * * * pay to each of his employees * * * [the applicable minimum rate] * * * for 40 hours of working time in any week and 1 and 1/2 times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week * * *

A comparison of the two provisions illustrates that New Jersey enforced a lower "maximum workweek" between February 1, 1967, the effective date of the federal statute amendments of 1966, and December 25, 1968, the last date of offenses charged in the indictments. As a result, pursuant to 29 *U. S. C. A.* § 218(a), the New Jersey maximum hour/overtime law is applicable to nondriver employees of defendant Comfort Cab, during this period.